# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-00378-SCT

*WALTER LEFFLER*

*v.*

*HARRY SHARP, INDIVIDUALLY, SHARP
ENTERPRISES, INC., AND KIM FREE,
INDIVIDUALLY, AND d/b/a QUARTER INN*

| | |
|---|---|
| DATE OF JUDGMENT: | 2/10/2003 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WAYNE E. FERRELL, JR. |
| | ANDRE FRANCIS DUCOTE |
| ATTORNEYS FOR APPELLEES: | J. WADE SWEAT |
| | CHARLES G. COPELAND |
| | JOEL W. HOWELL, III |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 11/10/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., DICKINSON AND RANDOLPH, JJ.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     On December 4, 2000, Walter Leffler filed suit in the Warren County Circuit Court against Kim Free, individually and d/b/a Quarter Inn (collectively Free) and Harry Sharp, individually, and Sharp Enterprises (collectively Sharp).    Leffler sought damages for injuries he received when he fell through the roof of the premises immediately adjacent to the Quarter Inn in Vicksburg, Mississippi.    Following discovery and the filing of motions for summary judgment by Free and Sharp, the trial judge determined that Leffler's status upon entering the

roof was that of a trespasser. The motions for summary judgment were granted, thereby dismissing all claims against Free and Sharp. Leffler appeals arguing the following issue:

> Whether the trial court erred in finding Leffler to be a trespasser and in granting summary judgment to Free and Sharp on that basis, when there were unresolved issues of fact regarding legal status and duty owed.

## FACTS

¶2. Leffler visited the Quarter Inn, a restaurant and lounge in Vicksburg, Mississippi, while he was in town conducting work on the old Mississippi River bridge. At approximately 10:00 p.m. one evening, Leffler and his co-workers arrived at a casino where they gambled and consumed alcoholic beverages until 11:30 p.m. They left the casino, went to a local sports bar, and continued to consume alcoholic beverages until approximately 2:00 a.m. on February 6, 2000. From the sports bar, they all went to the Quarter Inn. Leffler was a first-time visitor to the Quarter Inn.

¶3. While at the Quarter Inn, Leffler noticed an open window leading to the rooftop. (The small window is thirty-two and one-half inches from the floor and when fully opened provides a maximum opening of twenty-four inches in length and thirty-two inches in width.). After Leffler observed individuals on the rooftop, he presumed the area was open to Quarter Inn patrons. Although a locked glass door with "NOT AN EXIT" stenciled on the glass was only four feet away, Leffler entered the roof through the open window. As he was walking on the rooftop, he fell through the roof approximately twenty feet to the ground.

¶4. At the time of the incident, Kim Free owned and managed the Quarter Inn which is located on the second floor of a building owned by Sharp Enterprises, Inc. Harry Sharp is the

president of Sharp Enterprises, Inc. Sharp, individually, has no ownership interest in the property which is the subject of this appeal.

¶5.     The premises occupied by the Quarter Inn originally included a rooftop terrace, access to which was through a glass door inside the premises. In addition, there were at least two windows which overlooked the rooftop terrace from a common area of the Quarter Inn. Although previous businesses that occupied the present location of the Quarter Inn *may* have utilized the roof area as a part of their business, Free and Sharp assert that the roof was never part of the leased premises. The lease agreement offered as proof included the provision that "[l]essees will not have access to the roof terrace at the rear of 1302 Washington Street."

¶6.     Prior to the date of the lease between Sharp and Free, Sharp considered leasing the rooftop area. To determine the safety of the roof, Sharp "consulted with an architect and structural engineer who advised him that the roof was not safe for his intended use." Sharp then informed Free of this defect, and the two individuals, along with Jo Jo Saucier (a lessee of the premises with Free, but not a named party in the trial court or on appeal) discussed what measures should be taken to secure the roof area. The parties then decided that Saucier's husband would weld bars over the window in order to keep people off of the roof. However, neither the bars, nor any other protective measures, were ever placed over the window.

¶7.     This appeal involves the dispute over whether Leffler should be classified as an invitee, licensee, or trespasser at the time the injury occurred. It is undisputed that Leffler was an invitee upon his entrance into the Quarter Inn. The status dispute arises, however, when Leffler entered the roof and subsequently fell through it. Although Leffler insists that at the time of his injury he remained an invitee, he does argue in the alternative that his status was at least that

3

of an implied licensee. Leffler also argues for the sake of argument that *if* he is a trespasser, the owner of the premises has a duty to refrain from willfully and wantonly injuring him.

¶8.    Free and Sharp argue that upon Leffler's entrance onto the roof, he became a trespasser. As a result, they maintain that there is no showing that they acted willfully and wantonly, resulting in Leffler's injury.

## ANALYSIS

¶9.    This Court applies a de novo standard of review to a grant of summary judgment by the trial court. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. ***Russell v. Orr***, 700 So.2d 619, 622 (Miss. 1997). A motion for summary judgment lies only when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. M.R.C.P. 56(c). This Court does not try issues on a Rule 56 motion; it only determines whether there are issues to be tried. ***Townsend v. Estate of Gilbert***, 616 So.2d 333, 335 (Miss. 1993). The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. "The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense .... the existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact." ***Simmons v. Thompson Mach. of Miss., Inc.***, 631 So.2d 798, 801 (Miss. 1994) (citing ***Shaw v. Burchfield***, 481 So.2d 247, 252 (Miss. 1985)).

¶10.    Mississippi applies a three-step process to determine premises liability. ***Massey v. Tingle***, 867 So.2d 235, 239 (Miss. 2004) (*citing* ***Titus v. Williams***, 844 So.2d 459, 467 (Miss. 2003)). The first step consists of classifying the status of the injured person as an

4

invitee, licensee, or a trespasser. *Id*. Following this identification, the duty which was owed to the injured party is determined. *Id*. The third step is to determine whether this duty was breached by the landowner or business operator. *Id*. The determination of which status a particular plaintiff holds can be a jury question, but where the facts are not in dispute the classification becomes a question of law for the trial judge. *Adams v. Fred's Dollar Store of Batesville*, 497 So.2d 1097, 1100 (Miss. 1986) (*citing Graves v. Massey*, 227 Miss. 848, 853, 87 So.2d 270, 271 (1956)).

¶11.     As to the first step, determination of the injured party's status, this Court has held that "[a]s to status, an *invitee* is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage . . . A *licensee* is one who enters upon the property of another for his own convenience, pleasure, or benefit pursuant to the license or implied permission of the owner whereas a *trespasser* is one who enters upon another's premises without license, invitation, or other right." *Corley v. Evans*, 835 So.2d 30, 37 (Miss. 2003) (emphasis added) (*citing Hoffman v. Planters Gin Co.*, 358 So.2d 1008, 1011 (Miss. 1978) (*citing Langford v. Mercurio*, 254 Miss. 788, 183 So.2d 150 (1966)); *Wright v. Caffey*, 239 Miss. 470, 123 So.2d 841 (1960)). The Court has added that a trespasser enters another's property "merely for his own purposes, pleasure, or convenience, or out of curiosity, and without any enticement, allurement, inducement or express or implied assurance of safety from the owner or person in charge." *Titus*, 844 So.2d at 459 (*citing White v. Miss. Power & Light Co.*, 196 So.2d 343, 349 (Miss. 1967)).

5

¶12.    The second step is to identify the duty owed to the injured party. The owner of the premises "is not an insurer of the invitee's safety, but does owe to an invitee the duty to keep the premises reasonably safe, *and* when not reasonably safe, to warn only where there is hidden danger or peril that is not in plain and open view." **Massey**, 867 So.2d at 239 (*citing* **Corley** 835 So.2d at 37). Although licensees and trespassers are different classifications, "[l]andowners owe licensees and trespassers the same duty, specifically, to refrain from willfully or wantonly injuring them." **Massey**, 867 So.2d at 239 (*citing* **Titus**, 844 So.2d at 467).

¶13.    Leffler maintains that his status upon his arrival *and* at the time of the accident was that of an invitee of Free, the Quarter Inn, and Sharp, on the premises so that he could have a good time with his co-workers by partaking in services provided by the Quarter Inn. In order to receive classification as an invitee, this Court held that an invitee answers an invitation to enter the owner's premises "for their mutual advantage." **Holiday v. Pizza Inn, Inc.**, 659 So.2d 860, 865 (Miss. 1995). Leffler and the Quarter Inn mutually benefitted from the fact that Leffler was allowed to continue the night's fun at the Quarter Inn while the restaurant/lounge could continue making a profit.

¶14.    Leffler maintains that he remained an invitee at the time of his injury since Free and Sharp "held [the roof] out as a part of the premises by allowing patrons to enter and use the roof terrace." In a deposition, Sharp testified that he and Free discussed what action would best secure the window, thereby keeping patrons off the rooftop. Sharp instructed Free that the roof was not part of the lease and was not to be used by anyone. In order to secure the window, the parties agreed that bars would be welded to the window. Although this safety

6

measure never occurred, the dimensions of the window, being 24 inches by 32 inches, and almost 3 feet above the floor, belie any indication that patrons were invited to go onto the roof. Leffler asserts that because Sharp anticipated that customers might eventually try to utilize the rooftop, a question of fact exists as to whether Free and Sharp knew, or reasonably should have known, that customers were gathering on the roof.

¶15. Although Leffler was an invitee at the time he entered the Quarter Inn, he was not an invitee at the time of the injury. An invitee who "goes beyond the bounds of his invitation . . . loses the status of invitee and the rights which accompany that state." *Payne v. Rain Forest Nurseries, Inc.*, 540 So.2d 35, 38 (Miss. 1989) (*citing Dry v. Ford*, 238 Miss. 98, 117 So.2d 456 (1960)). Free and Sharp only extended their invitation to patrons to come inside the establishment. Upon his entrance to the Quarter Inn, Leffler was an invitee, but once he exited the establishment and entered onto the roof terrace, he went "beyond the bounds of his invitation," therefore losing his invitee status. *Id*.

¶16. An occupant is an invitee where the owner of the premises and the occupant receive mutual benefits. *Corley*, 835 So.2d at 37. Neither Free nor Sharp benefitted from Leffler's walk on the roof. In addition to mutual benefits, a landowner does not have to insure the invitee's safety, but the landowner must "keep the premises reasonably safe, and when not reasonably safe, to warn only where there is hidden danger . . . ." *Massey*, 867 So.2d. at 239. Free and Sharp kept the Quarter Inn reasonably safe for patrons. Leffler's accident did not happen within the walls of the Quarter Inn, but on a rooftop adjacent to the establishment. Free and Sharp's acts of locking and marking the exit door were done to keep the Quarter Inn safe

7

for patrons. Leffler was not an invitee at the location and time of the accident and, therefore, was not owed the duty given to an invitee.

¶17. Leffler argues in the alternative that he was a licensee at the time of the accident. "A licensee, in contrast [to a trespasser], enters the property of another 'pursuant to the license or implied permission of the owner' but enters for the 'convenience, pleasure or *benefit' of the licensee*." ***Davis v. Ill. Cent. RR.***, 921 F.2d 616, 618 (5th Cir. 1991) (applying Mississippi law) (emphasis added) *(citing **Hoffman v. Planters Gin Co.**, 358 So.2d 1008, 1011 (Miss. 1978))*. Leffler entered the roof area for his convenience, pleasure and benefit because the bar was hot, crowded, and loud while the roof terrace was cool, open, and quiet.

¶18. In an effort to further clarify the distinction between the status of an injured party, this Court in ***Clark v. Moore Memorial United Methodist Church***, 538 So.2d 760, 764 (Miss. 1989), distinguished between the "invitation" required of an invitee and "permission" required for a licensee. The word *invitation* was defined as "conduct which justifies others in believing that the possessor desires them to enter the land," while *permission* was defined as "conduct justifying others in believing that the possessor is willing that they shall enter, if they desire to do so. . . ." ***Id.*** (*citing* Restatement (Second) of Torts § 332 (1965)). The two terms were further clarified with "[m]ere permission, as distinguished from invitation, is sufficient to make the visitor a licensee . . . but it does not make him an invitee . . . ." ***Id.***

¶19. Free and Sharp never engaged in conduct signifying to patrons that the roof area was open to patrons. No dispute exists that the window was open on the night in question. However, based upon the definition of *permission*, these facts indicate that they did not intend (or grant permission) for Leffler or other patrons to enter the roof area through the glass door,

8

or through the open window. Although Leffler entered the roof terrace for his own benefit, he lacked permission to enter the roof terrace from Free or Sharp. Leffler did not enjoy the status of a licensee.

¶20. Free and Sharp argue that Leffler was a trespasser, citing this Court's reasoning in *Kelley v. Sportsmen's Speedway*, 224 Miss. 632, 80 So.2d 785, 791 (1955): "A trespasser is a person who enters the premises of another without license, invitation, or other right, and *intrudes for some definite purpose of his own, or at his convenience, or merely as an idler with no apparent purpose, other than, perhaps, to satisfy his curiosity.*" (emphasis added). Leffler entered the roof area without invitation or permission from Free or Sharp. On his way to the restroom, Leffler had seen two individuals standing outside the window. Returning from the restroom, the two individuals had reentered the Quarter Inn. Wanting to escape the crowd, loud music, heat, and smoke a cigarette, Leffler entered the roof terrace. There was no sign or indication within the Quarter Inn inviting or granting permission to patrons to enter the roof terrace. However, a sign on the glass door warned patrons not to use the door as an exit to the roof terrace.

¶21. This Court recently reaffirmed that a trespasser enters another's property "without any enticement, allurement, inducement . . . ." *Massey*, 867 So.2d at 239 (*citing White*, 196 So.2d at 349). Leffler was neither enticed nor allured onto the roof by Free or Sharp. Although the window was open, Free and Sharp did not entice the patrons to step through a high, small, narrow window onto the roof. In addition, neither party has provided evidence that Quarter Inn employees were aware that some patrons had entered the roof area.

9

¶22.    The third step in determining premises liability is determination of whether the owner breached a duty.    Leffler argues that Free and Sharp knew of the roof's danger and neglected to secure the window whereby one could enter onto the roof, thus breaching the duty owed to a trespasser.    The duty owed to a trespasser is "to refrain from willfully or wantonly injuring [the trespasser]." *Saucier ex rel. Saucier v. Biloxi Reg'l Med. Ctr.*, 708 So.2d 1351, 1357 (Miss. 1998).    To constitute willful or wanton injury, "something more is required to impose liability than mere inadvertence or lack of attention; there must be a more or less extreme departure from ordinary standards of care, and conduct must differ in quality, as well as in degree, from ordinary negligence involving a conscious disregard of a known serious danger." *Hoffman v. Planters Gin Co.*, 358 So.2d at 1012-13 (*citing* *Coleman v. Associated Pipeline Contractors, Inc.*, 444 F.2d 737 (5th Cir. 1971)).    Free and Sharp never disregarded or took lightly the condition of the roof terrace.    In order to keep patrons off of it, Sharp kept in his possession the only key to the glass door exiting onto the roof in order to ensure that the door remained locked at all times.    They not only kept the door locked; they also stenciled in red letters "NOT AN EXIT" on the glass door.

¶23.    An owner owes trespassers no duty to keep his premises in a safe condition for their use, and as a general rule, he is not held responsible for an injury sustained by a trespasser upon the premises from a defect therein.    *Kelley*, 80 So.2d at 791.    Although the roof terrace was owned by Sharp Enterprises, the roof was not part of the lease between Free, Sharp, and Sharp Enterprises.    The roof was also not a part of the Quarter Inn.    Additionally, "[a] landowner need not make it impossible for persons to trespass before he may treat intruders as trespassers." *Adams*, 497 So.2d at 1100.    Just as the injured party in *Adams* entered a parking lot without

10

permission, Leffler entered the roof area of the Quarter Inn without invitation or permission. *Id*. Free and Sharp took reasonable steps to make sure access to the roof was denied by keeping the door locked and stenciling the letters "NOT AN EXIT" on the door. Although this Court is mindful of the fact that Leffler received severe injuries, his status at the time of the incident was that of a trespasser, and the trial court correctly granted summary judgment dismissing his claims against Kim Free, individually, and Quarter Inn, Inc. as well as his claims against Harry Sharp, individually, and Sharp Enterprises, Inc.

## CONCLUSION

¶24.    This Court in *Little ex rel. Little v. Bell*, 719 So.2d 757, 760-61 (Miss. 1998), determined that since the parties agreed on the facts, the status of the injured party was a question of law and to be determined by the trial judge. As in *Little*, the parties in the present case have raised a question of law to be decided by the trial judge: whether Leffler was an invitee, licensee, or trespasser when he exited onto the roof. The trial court correctly determined that Leffler was a trespasser on the roof terrace. The trial court's grants of summary judgment in favor of Sharp, Sharp Enterprises, Free, and the Quarter Inn are hereby affirmed.

¶25.    **AFFIRMED.**

        **SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR.  DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**

11