# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-01823-SCT

*TRANSOCEAN ENTERPRISE, INC.*

*v.*

*INGALLS SHIPBUILDING, INC.*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 10/10/2008 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN A. SCIALDONE |
| | TODD G. CRAWFORD |
| | RYAN A. HAHN |
| ATTORNEYS FOR APPELLEE: | RICHARD P. SALLOUM |
| | J. THOMAS HAMRICK, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 03/11/2010 |
| MOTION FOR REHEARING FILED: | 10/07/2009 |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing is granted.[1]  The original opinions are withdrawn and these

opinions are substituted therefor.

¶2.     Ingalls Shipbuilding, Inc., and Transocean Enterprise, Inc., were named defendants

in a personal-injury action which was settled.  Ingalls Shipbuilding, Inc., alleged a claim for

---

[1]Based on today's opinion, the Motion to Amend or Clarify Opinion filed by
Transocean Enterprise, Inc., is dismissed as moot.

contractual indemnity pursuant to a Shipyard Agreement between itself and Transocean Enterprise, Inc. The Circuit Court of Jackson County entered judgment granting Ingalls Shipbuilding, Inc., indemnity, and as a result, Transocean Enterprise, Inc., appealed to this Court.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶3. This matter arises from a lawsuit filed by Ernie Cardwell against Transocean Enterprise, Inc., (Transocean) and Ingalls Shipbuilding, Inc., (Ingalls)[2] in the Circuit Court of Jackson County. Cardwell alleged that he was injured on May 28, 1999, while employed by Coastline Contractors, Inc., (Coastline) and working aboard the drill ship *Discoverer Enterprise* as a welder/pipe fitter. The *Discoverer Enterprise* originally was constructed in Spain, before sailing to Ingalls' shipyard in Pascagoula, Mississippi, for installation of a twenty-story drill derrick and various drilling modules. Allegedly, while Cardwell was sitting on the post, the vessel's ballast tanks were adjusted, causing it to shift, which resulted in tension so great that it broke away and ripped the rigging post from the deck. This series of events caused Cardwell to fly approximately twenty feet into the air and land on the ship's deck, rendering him unconscious.

¶4. Cardwell subsequently filed this personal-injury action for damages against both Transocean and Ingalls. Cardwell's claim was settled for $625,000 ($300,000 paid by Transocean, $300,000 paid by Ingalls, and $25,000 paid by workers' compensation). Ingalls

---

[2]Ingalls Shipbuilding, Inc., became Northrop Grumman Ship Systems, Inc., in 2002, and in 2008, became Northrop Grumman Shipbuilding, Inc.

filed a cross-claim against Transocean, alleging that the Shipyard Agreement between them obligated Transocean to defend and indemnify Ingalls.[3] Article XVI of the Shipyard Agreement between Transocean Enterprise and Ingalls stated, *inter alia*:

> Builder and Owner each agree to defend, indemnify and hold the other and their respective affiliates, officers, directors, agents and employees and subcontractors free and harmless from and against any and all claims, demands, causes of action, judgments or liabilities of every kind and character (including, without limitation, the cost of the suit and reasonable attorneys' fees) brought by any invitees of the indemnitor or its subcontractors or representatives or any survivor of the foregoing on account of injury to or death of any such parties or damages to their property in connection with the work. The indemnity obligations assumed in the preceding sentence shall be without limit and without regard to the cause or causes thereof (including pre-existing conditions), the unseaworthiness of any vessel or vessels or the negligence of any party or parties, whether such negligence be sole, joint or concurrent, active or passive or gross.

¶5. On January 10, 2008, the Circuit Court of Jackson County, Judge Robert P. Krebs presiding, heard oral arguments,[4] and subsequently, on July 30, 2008, entered an order granting Ingalls indemnity as to Transocean in the amount of $300,000, subject to prejudgment interest; however, Ingalls' request for attorneys' fees was denied. As a result, a Final Judgment, dated August 4, 2008, was entered. On August 14, 2008, Ingalls filed its Motion to Alter or Amend Order and Judgment, seeking attorneys' fees and expenses in defending against Cardwell's claims. Transocean responded that it agreed with the position of Ingalls, "but **solely** for the reason that if indemnity is owed under the Shipyard Agreement

---

[3]Ingalls also argues that the Shipyard Agreement required Transocean to procure liability insurance to protect Ingalls against Cardwell's claims.

[4]The record reflects that both parties, through their attorneys, agreed to submit the issues to the trial judge on briefs and oral arguments, without the benefit of a jury.

at issue, then Transocean agrees the contract would otherwise provide for the recovery of attorney's fees as a component of this indemnity." (Emphasis added.) Thus, Transocean reserved its right to challenge the underlying basis upon which indemnity was awarded. On October 10, 2008, the Jackson County Circuit Court entered its Amended Order and Final Judgment, stating that Ingalls should recover from Transocean "the sum of $300,000 plus its reasonable attorney's fees of $33,619.50 and expenses of $7,881.94 in defending against the claims of Ernie Cardwell in this case, plus prejudgment interest of $118,112.72 calculated at 8% per annum in accord with Section 75-17-1(1) Mississippi Code Annotated from June 15, 2004 . . . plus post-judgment interest of 8% per annum from the date hereof and all costs of suit herein." Transocean timely perfected this appeal.

**DISCUSSION**

¶6.    Transocean contends that the indemnity provision of the Shipyard Agreement is not triggered because Ernie Cardwell was an independent contractor of Transocean, as opposed to a subcontractor or an invitee. Further, Transocean argues that, even assuming the indemnity provision is triggered, Ingalls' claim is barred by Mississippi Code Section 31-5-41. The issues presented to this Court for consideration are as follows: (1) whether the trial court erred in granting indemnity to Ingalls in its cross-claim against Transocean pursuant to the Shipyard Agreement between these parties; (2) whether the trial court erred by interpreting the contract terms for indemnity to an invitee, when Coastline employee Ernie Cardwell was aboard the vessel as an independent contractor at the time of his alleged injuries; (3) whether the trial court erred in applying Mississippi law over general maritime

4

law, which does not recognize the status of an invitee, and likewise, whether the trial court erred in finding the *Discoverer Enterprise* was not a vessel capable of navigation; and (4) alternatively, if Mississippi law applies, whether the trial court erred by not applying Mississippi Code Section 31-5-41, which invalidates the indemnity provision at issue. The ultimate issue before this Court is whether the trial court erred in granting indemnity to Ingalls. We thus combine these issues and restate the critical issue before us for the sake of today's discussion.

> **WHETHER THE TRIAL COURT ERRED IN GRANTING INDEMNITY TO INGALLS IN ITS CROSS-CLAIM AGAINST TRANSOCEAN PURSUANT TO THE SHIPYARD AGREEMENT BETWEEN THESE PARTIES.**

¶7.     "In bench trials, a circuit judge's findings are subject to the same standard of review as those of a chancellor." *Univ. of Miss. Med. Ctr. v. Pounders*, 970 So. 2d 141, 145 (Miss. 2007) (citing *Kight v. Sheppard Bldg. Supply, Inc.*, 537 So. 2d 1355, 1358 (Miss. 1989)). "Our familiar standard of review requires that when a trial judge sits without a jury, this Court will not disturb his factual determinations where there is substantial evidence in the record to support those findings." *Ezell v. Williams*, 724 So. 2d 396, 397 (Miss. 1998) (citing *Yarbrough v. Camphor*, 645 So. 2d 867, 869 (Miss. 1994); *Omnibank of Mantee v. United S. Bank*, 607 So. 2d 76, 82 (Miss. 1992)). Thus, our scope of review affords deferential treatment to the trial judge's findings. *City of Greenville v. Jones*, 925 So. 2d 106, 109 (Miss. 2006). "[T]his Court ought and generally will affirm a trial court sitting without a jury on a question of fact unless, based upon substantial evidence, the court must

5

be manifestly wrong." *Yarbrough*, 645 So. 2d at 869 (citations omitted). "The word 'manifest,' as defined in this context, means 'unmistakable, clear, plain, or indisputable.'" *Singley v. Singley*, 846 So. 2d 1004, 1007 (Miss. 2002) (quoting *Magee v. Magee*, 661 So. 2d 1117, 1122 (Miss. 1995)). This Court, however, reviews questions of law *de novo*. *Howard v. Estate of Harper ex rel. Harper*, 947 So. 2d 854, 856 (Miss. 2006) (citing *Sennett v. United States Fid. & Guar. Co.*, 757 So. 2d 206, 209 (Miss. 2000)). *See also Harrison County v. City of Gulfport*, 557 So. 2d 780, 784 (Miss. 1990).

¶8. Before the trial court, Ingalls argued that Mississippi law should apply over general maritime law, and the trial court agreed. "It has long been held that neither ship construction nor supplying materials for that purpose is a maritime business . . . ." *Lowe v. Ingalls Shipbuilding, Div. of Litton Systems, Inc.*, 723 F. 2d 1173, 1185 (5th Cir. 1984) (citation omitted). "[T]he same reasons which exclude such contracts from admiralty jurisdiction likewise apply to agreements made after the hull is in the water, for the work and material necessary to consummate a partial construction and bring the vessel into condition to function as intended." *Thames Towboat Co. v. The Schooner "Francis McDonald" (The Francis McDonald)*, 254 U.S. 242, 245, 41 S. Ct. 65, 65 L. Ed. 245 (1920); *see also Cain v. Transocean Offshore USA, Inc.*, 518 F. 3d 295, 301 (5th Cir. 2008) ("a structure under construction remains a non-vessel until it is complete and ready for duty upon the sea"). As stated by the trial court, "[w]hile the vessel was able to sail to Ingalls under its own power, it was not in condition that it could perform the type of duty for which it was built, therefore making maritime law inapplicable." The *Discoverer Enterprise* was built and designed to

6

be a drill ship; therefore, it was not in condition to function as intended until the twenty-story drill derrick and various drilling modules were installed at Ingalls. Also, the Shipyard Agreement contained a choice-of-law provision which stated that it would be governed by Mississippi law. "[U]nder admiralty law, where the parties have included a choice of law clause, the state's law will govern unless the state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law." *Stoot v. Fluor Drilling Servs., Inc.*, 851 F. 2d 1514, 1517 (5th Cir. 1988). As such, the trial court correctly determined that maritime law does not apply and that Mississippi law governs this dispute.

¶9. The trial court also ruled that Cardwell was an invitee, stating:

> "[A]n invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage. . . ." *Martin v. B. P. Exploration & Oil*, 769 So. 2d 261 (Miss. Ct. App. 2000). It is clear that Cardwell was on the Discoverer Enterprise based upon an express invitation to be there. The Court can see no other way, under Mississippi law, to classify Cardwell.

As evidenced by the record, Cardwell was employed by Coastline, and Coastline employees not only performed work assignments at the direction of Transocean, but they actually were housed aboard the *Discoverer Enterprise*. The trial court did not abuse its discretion in ruling that Cardwell was an invitee under Mississippi law. This Court has held that "an invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage." *Leffler v. Sharp*, 891 So. 2d 152, 156 (Miss. 2004) (citations omitted). Cardwell was aboard the *Discoverer*

7

*Enterprise* at Ingalls' shipyard due to the invitation of Transocean via Coastline for the mutual advantage of all parties herein.

¶10.    As discussed by the trial court, with the classification of Cardwell as an invitee, the language of the Shipyard Agreement is clear, and Transocean seemingly has a duty to indemnify Ingalls.  This duty, however, arguably could be voided by Mississippi Code Section 31-5-41 to the extent that the indemnity provision in the Shipyard Agreement provides for indemnification of Ingalls for Ingalls' own negligence.  The trial court justifiably did not address the implications of Mississippi Code Section 31-5-41.  This section states:

> With respect to all public or private contracts or agreements, for the construction, alteration, repair or maintenance of buildings, structures, highway bridges, viaducts, water, sewer or gas distribution systems, or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise and/or agreement contained therein to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.
>
> This section does not apply to construction bonds or insurance contracts or agreements.

Miss. Code Ann. § 31-5-41 (Rev. 2008).  This statute could reasonably be interpreted as invalidating indemnity or "hold-harmless" clauses in construction contracts to indemnify another person from that person's own negligence. *Id.*  Transocean and Ingalls, however, stipulated that the issue of tort allocation of liability was not before the trial court, and thus, not before this Court.  In addition, neither party has argued fault, and there is insufficient information in the record for this Court to determine to what extent, if any, Ingalls was

8

negligent and seeks to be indemnified for its own negligence. Thus, this Court, like the trial court, is not required to consider the issue of whether the provisions of Section 31-5-41 are applicable to today's case. As such, we are constrained to affirm the judgment of the trial court granting Ingalls indemnity.

## CONCLUSION

¶11. The trial court correctly determined that Mississippi law governs this dispute and that Cardwell was an invitee. Mississippi Code Section 31-5-41 cannot be applied to our case today since the issue of fault is not before this Court. Thus, we affirm the judgment of the Jackson County Circuit Court.

¶12. **AFFIRMED.**

**WALLER, C.J., DICKINSON, LAMAR AND PIERCE, JJ., CONCUR. GRAVES, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J.; RANDOLPH AND CHANDLER, JJ., JOIN IN PART. RANDOLPH, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J.; DICKINSON AND PIERCE, JJ., JOIN IN PART.**

**GRAVES, PRESIDING JUSTICE, SPECIALLY CONCURRING:**

¶13. Finally, the majority reaches the right result in this case. But, alas, it is for the wrong reason. While I agree that this Court should not consider the applicability of Section 31-5-41 and that Ingalls is entitled to indemnity, I am compelled to explain the reasons for my agreement.

¶14. The majority states: "Transocean seemingly has a duty to indemnify Ingalls. *This duty, however, arguably could be voided by Mississippi Code Section 31-5-41 to the extent that the indemnity provision in the Shipyard Agreement provides for indemnification of*

9

*Ingalls for Ingalls' own negligence."* Maj. Op. ¶ 10 (emphasis added). There are two reasons why that conclusion is flawed.

¶15.    First, as I explained in my dissent to the original majority opinion in this case, Transocean waived the affirmative defense of the applicability of Mississippi Code Section 31-5-41. That dissenting opinion stated:

> The majority reverses the trial court's grant of indemnity to Ingalls, holding that Mississippi Code Section 31-5-41 invalidates indemnity clauses in construction contracts that indemnify a person from that person's own negligence, and that Transocean preserved the issue of the applicability of Section 31-5-41 for consideration on appeal. I disagree that Transocean preserved the issue of the applicability of Section 31-5-41, and therefore I dissent.
>
> The majority reasons that Transocean preserved the issue for appeal when, in its answer to the third-party complaint, it pleaded: 1) Ingalls "failed to state a claim or cause of action upon which relief may be granted" and 2) "all defenses to the validity or enforceability of any indemnity provisions which are available to it under the . . . laws of Mississippi. . . . " The majority also points out that Transocean asserted the applicability of Section 31-5-41 in its pretrial brief. It is illogical to argue that Transocean preserved the issue of the applicability of this little-known statute by including in its answer the boilerplate Rule 12(b)(6) defense of "failure to state a claim or cause of action upon which relief may be granted" and the very general pleading of all defenses available under Mississippi law to Ingalls' claim for indemnity. Furthermore, whether or not Transocean raised Section 31-5-41 in its pretrial brief is irrelevant because Transocean filed its pretrial brief six and one-half years *after* it filed its answer to the third-party complaint.
>
> Transocean should be barred from asserting the affirmative defense of the applicability of Section 31-5-41 because Transocean failed to timely raise the defense as required by the Mississippi Rules of Civil Procedure. Rule 8(c) provides that, in pleading to a preceding pleading such as a cross-claim, a party shall set forth all affirmative defenses. Miss. R. Civ. P. 8(c). Similarly, Rule 12(b) provides that all defenses to a claim for relief in any pleading, including a cross-claim, shall be asserted in the responsive pleading thereto if one is required. Miss. R. Civ. P. 12(b). *See also **Miss. Dep't of Human Servs. v.***

10

*Guidry*, 830 So. 2d 628, 634 (Miss. 2002) (explaining that when a responsive pleading is required, an affirmative defense is waived if not raised by a pleading). Transocean failed to raise the affirmative defense of the applicability of Section 31-5-41 in its answer to the third-party complaint and never amended its answer pursuant to Rule 15(a)[FN1] to include the defense. There is no evidence in the record that Transocean was even aware of the existence of Section 31-5-41 at or around the time Transocean wrote its answer to the third-party complaint. Transocean did not raise Section 31-5-41 until it filed its pretrial brief in November 2007, six and one-half years *after* it filed its answer to the third-party complaint.

> FN1. Rule 15(a) provides that a party may amend a pleading at any time before a responsive pleading is served, or, if a pleading is one to which no responsive pleading is permitted and the action has not been placed on the trial calendar, the party may amend the pleading within thirty days after it is served. Miss. R. Civ. P. 15(a). After the responsive pleading has been served or the thirty-day period has elapsed (as the case may be), Rule 15(a) allows the party to amend a pleading only by leave of the court or upon written consent of the adverse party. *Id.*

The majority cites only one case, ***Howard v. Estate of Harper ex rel. Harper***, 947 So. 2d 854 (Miss. 2006), as support for its erroneous finding that Transocean preserved the issue of the applicability of Section 31-5-41 for consideration on appeal by pleading a Rule 12(b)(6) defense. In ***Howard***, representatives of the estates of deceased nursing home residents filed suit against the nursing home, a nursing home administrator, and a nursing home licensee. ***Howard***, 947 So. 2d at 856. Among other claims, the plaintiffs alleged medical malpractice, fraud, and breach of fiduciary duty. *Id.* On appeal to this Court, the nursing home administrator and licensee raised defenses against these three claims. *Id.* at 860-61. The plaintiffs responded that the administrator and licensee had waived these defenses when the administrator and licensee failed to assert them in either their motion to dismiss (i.e., their original reply papers) or their petition for interlocutory appeal. *Id.* at 860. In response to the plaintiffs' argument regarding waiver, the ***Howard*** Court stated:

> In the [defendants'] motion to dismiss, they asserted the Plaintiffs failed to state a claim upon which relief could be granted pursuant to Miss. R. Civ. P. 12(b)(6). We find this assertion is sufficient to preserve the issue[s] for appeal.

11

*Id.* The Court, however, offered absolutely no explanation for this finding.

Not only is the ***Howard*** Court's finding regarding the inclusiveness of a Rule 12(b)(6) defense unsupported, but in a more recent decision, ***Burleson v. Lathem***, this Court specifically stated that a Rule 12(b)(6) defense cannot possibly preserve any and all affirmative defenses *and* offered a compelling reason why this must be the case.[FN2] ***Burleson v. Lathem***, 968 So. 2d 930, 936 (Miss. 2007). In ***Burleson***, the defendant failed to assert the affirmative defenses of insufficiency of process and insufficiency of service of process in his initial responsive pleadings or by motion simultaneously therewith, and he failed to amend his answer pursuant to Mississippi Rule of Civil Procedure 15(a) to include these defenses. *Id.* The defendant argued that he had preserved these defenses by including a catch-all Rule 12(b)(6) defense in his initial answer. *Id.* The ***Burleson*** Court disagreed and held that interpreting Rule 12(b)(6) to preserve all affirmative defenses would "allow the defendant more than one bite at the apple, since he could plead a Rule 12(b)(6) defense in the initial responsive pleadings, with the intent of asserting other Rule 12 defenses at a later time." *Id.* Moreover, the argument that a Rule 12(b)(6) defense preserves all affirmative defenses is illogical because it "fails to explain the existence of the remaining Rule 12(b) defenses and other affirmative defenses, which would be unnecessary if a party need only assert a Rule 12(b)(6) defense to preserve any objections to allegations set forth in the complaint." *Id.*

> FN2. The majority fails to mention ***Burleson v. Lathem*** in its opinion.

Similarly, pleading "all defenses to the validity or enforceability of any indemnity provisions which are available to it under the . . . laws of Mississippi. . . . " cannot be said to preserve any and all defenses against a claim for indemnity, for if it did, there would be no purpose for a party defending against a claim for indemnity to include any other defenses in its answer. As stated above, the defendant unjustly would be allowed multiple bites at the apple, since it could include a very general defense in its initial answer with the intention of asserting other defenses months or, as in this case, years later.

Lastly, as noted above, the fact that Transocean raised Section 31-5-41 in its pretrial brief is irrelevant, because Transocean filed its pretrial brief in November 2007, six and one-half years *after* it filed its answer to the third-party complaint.

Therefore, based on the law as well as logic, I must disagree that Transocean preserved the issue of the applicability of Section 31-5-41 for consideration on appeal. Accordingly, I dissent and would affirm the trial court's grant of indemnity to Ingalls.

¶16. The second reason why this Court should not consider the applicability of Section 31-5-41 is that this Court has no obligation to *sua sponte* raise the defense of the applicability of the statute, nor should it do so in the instant case. In other words, this Court is not required to, nor should it, rule on the issue of whether the indemnification agreement in the Shipyard Agreement is illegal and void as against public policy. The alleged illegality at issue is not of a severe nature, and it is unreasonable to conclude that this Court has a duty to take up the issue *sua sponte* simply because it involves a possible public-policy violation.

¶17. There are instances where courts should declare contracts void as illegal and against public policy regardless of whether the affirmative defense of illegality or contravention of public policy is timely raised by a party. For example, where a contract consists of an agreement to commit a felony, courts should of course refuse to enforce the contract even if neither party timely raises the affirmative defense of illegality. This Court has long distinguished between contracts *malum in se*, or inherently evil, and contracts *malum prohibitum*, or unlawful by virtue of statute. *See, e.g.*, **Seymour v. Evans**, 608 So. 2d 1141, 1145 (Miss. 1992) (citing **Rast v. Sorrell**, 127 So. 2d 435, 437 (Miss. 1961) and **Gardner v. Reed**, 42 So. 2d 206, 208 (Miss. 1949)). While courts generally should refuse to enforce any contract *malum in se*, regardless of whether the issue of illegality is timely raised by any of the parties, courts generally should not refuse to enforce contracts *malum prohibitum* as

13

illegal or against public policy unless the defendant has timely raised the affirmative defense of illegality.

¶18.   As noted, the contract illegality at issue in the instant case is *malum prohibitum*, not *malum in se*, and not severe in nature.  But for the existence of Section 31-5-41 – which carves out a little-known exception to the general rule regarding indemnification contracts and makes it illegal for a party to a construction contract to contract for indemnification from its own negligence – it would have been unquestionably legal for Transocean and Ingalls to enter into the indemnification agreement at issue in the instant case.  Many contracts to indemnify are neither unusual nor illegal.  For example, nearly every car owner enters into a contract for liability insurance.

¶19.   It is unreasonable to conclude that this Court, after determining that an affirmative defense was not timely raised and thus waived, has a duty to take up the issue anyway *sua sponte* whenever the issue involves a possible public-policy violation.  If that were the case, then arguably this Court would have a duty to research and, if relevant, *sua sponte* raise practically every affirmative defense that might be available to any of the parties in the case, because practically every law has some public-policy rationale behind it.  This Court would be obligated to void contract provisions not only pursuant to Section 31-5-41 but also on other public-policy grounds such as statute of limitations, failure of consideration, and statute of frauds *even when such affirmative defenses were not timely raised by a party to the action*.  Even if one were to argue that the applicability of Section 31-5-41 or the defense of illegality of contract more generally is distinguishable from affirmative defenses like statute of

14

limitations and failure of consideration, under the majority's holding, it would still follow that courts would have the duty to research and *sua sponte* raise all possible defenses of illegality (including little-known statutes declaring otherwise legal contracts void as against public policy) every time they are presented with a contract claim. Needless to say, that would be an unreasonable burden to place on the courts.

¶20. Mississippi caselaw holds that arguments of contract illegality are affirmative defenses that are lost if not timely raised and that this Court does not have a general duty to raise the issue of contract illegality *sua sponte*. In ***Hertz Commercial Leasing Division v. Morrison***, the issue presented was "whether the defendant, a lessee under an equipment leasing agreement, must affirmatively plead that the acceleration clause [in the leasing agreement] is a penalty – and thus substantially unenforceable – to employ that theory and judicially avoid obligations otherwise provided under the literal language of the lease." ***Hertz Commercial Leasing Div. v. Morrison***, 567 So. 2d 832 (Miss. 1990). A contract clause is considered a penalty when it is intended to punish the breaching party rather than compensate the injured party. *See **Cont'l Turpentine & Rosin Co. v. Gulf Naval Stores Co.***, 142 So. 2d 200, 209 (Miss. 1962) (" . . . the damages stipulated for must be such as to amount to compensation only, and if the principle or compensation has been lost sight of, the sum named will be treated as a penalty.") A contract clause found to constitute a penalty may be held unenforceable as against public policy. *See **id.*** at 204, 209 (where the defendants argued that a contractual provision was void as against public policy because it constituted a penalty and this Court ruled in their favor on this issue, holding "Sec. 8 of the

Articles of Association [i.e., the contract] was not a genuine-pre-estimate of liquidated damages, but was in fact a measure to 'police' and terrorize the members so that they would not violate the agreement, and is disproportionate to the actual damages."); *Hertz*, 567 So. 2d at 837 (Hawkins, J., dissenting) ("This case is about a contract which could be void because it is against public policy."). The defendant lessee in *Hertz* never raised the defense that the acceleration clause was a penalty, but the trial court took up the issue *sua sponte*, construing the acceleration clause as a penalty and thus limiting the amount the plaintiff lessor could recover under the contract. *Id.* at 833-34. This Court reversed the judgment of the trial court, agreeing with the plaintiff that "penalty is in the nature of the affirmative defense of 'illegality' which Rule 8(c), Miss. R. Civ. P., required that Morrison [i.e., the defendant] plead on pain of waiver." *Id.* at 834, 837. In other words, this Court held that it was wrong for the court to raise the affirmative defense of penalty *sua sponte*.

¶21.    Moreover, the *Hertz* court stated that, even when an illegal contract, like a gambling contract, is void *ab initio* (i.e., treated as null and void from the outset), the contract, if sued on, "may be said subject to the affirmative defense of illegality within Rule 8(c)." *Id.* at 835. In other words, even contracts illegal on their face are subject to the affirmative defense pleading requirement embodied in Rule 8(c), and courts may choose not to raise *sua sponte* the illegality of such contracts.

¶22.    The *Hertz* court goes on to explain that the defense of illegality is similar to the defenses of failure of consideration and statute of frauds, both of which indisputably

16

constitute affirmative defenses and both of which will not be taken up by this Court *sua sponte*:

> As defenses to a contract action, failure of consideration, illegality and statute of frauds are similar. Each assumes the contract on its face entitles plaintiff to prevail but then reaches into the bag of rules prescribing forms and limiting the power of persons to contract and pulls one out, saying, "See, this contract may not be enforced." Each finds a rule of law external to the contract and brings it to bear to bar the plaintiff's action. As such, failure of consideration, illegality, and statute of frauds each "constitute[s] an avoidance or affirmative defense." The words "any other" preceding the general "matter constituting an avoidance or an affirmative defense" [in Rule 8(c)] declare the *specifica* "failure of consideration, . . . , illegality, . . . , [or] statute of frauds" defenses of like genre with the *genera.*

> The penalty theory the trial court employed is of like genre. It reaches beyond the contract's literal language into the positive law and employs a principle there found to avoid Hertz's [i.e., the plaintiff's] enjoyment of substantial benefits embedded in the contract's language. This is what is meant by a "matter constituting an avoidance or affirmative defense" within Rule 8(c).

*Id.* at 835. Therefore, the ***Hertz*** court held that the defense of penalty is in the nature of an affirmative defense and that the trial court was thus wrong to raise and rule on the issue *sua sponte*. ***Id.*** at 836-37. Similarly, the applicability of Section 31-5-41 is an affirmative defense, and this Court should not raise it *sua sponte*.

¶23. As the Fifth Circuit has noted, the ***Hertz*** court interpreted Rule 8(c) to mean that, if a defendant fails to affirmatively plead the defense that a contract is illegal or against public policy, courts have an obligation to enforce the contract even if the contract is shown at trial to be against public policy. ***Knight v. Knight***, 208 F. 3d 514, 517 (5th Cir. 2000).

¶24. Lastly, in ***Martin v. Estate of W. W. Martin***, this Court explained that a note is a contract, and contracts against public policy are unenforceable, but "[w]here, as here, the

17

maker of a note takes the view that the note is unenforceable as against public policy, the maker must say so affirmatively by way of defense." *Martin v. Estate of W.W. Martin*, 599 So. 2d 966, 968 (Miss. 1992) (citing *Hertz*). *See also Pass Termite and Pest Control, Inc. v. Walker*, 904 So. 2d 1030, 1033-34 (Miss. 2004) (citing *Hertz* and *Martin* as support for the statement that affirmative defenses must be raised in a party's answer).

¶25. In summary, both reason and the controlling caselaw support the conclusion that this Court should not *sua sponte* raise the applicability of Section 31-5-41, an affirmative defense that the majority does not dispute the defendant failed to preserve.

¶26. The majority reasons that this Court should not consider the applicability of Section 31-5-41 because the parties "stipulated that the issue of tort allocation of liability was not before the trial court, and thus, not before this Court," and "there is insufficient information in the record for this Court to determine to what extent, if any, Ingalls was negligent . . . ." Maj. Op. ¶ 10. First, it must be noted that in the majority's original opinion, the majority determined that the appropriate disposition was to remand this case to the trial court for a determination of the extent to which Ingalls was negligent. The majority now finds that "insufficient" information in the record regarding fault is a basis for affirming the trial court. It is unsound reasoning when a court finds that a record is "insufficient" to decide a relevant issue, and then uses the finding of an "insufficient" record as a basis for reaching a decision. This is a dangerous precedent. It allows that a party could be responsible for an "insufficient" record and then be rewarded for the "insufficiency" with a favorable ruling on appeal.

18

¶27. Second, it is illogical to argue that the record is deficient on a matter that the parties have stipulated is not an issue. At the trial court hearing, it was made clear that:

> . . . by stipulation between the parties, there is no issue between [*sic*] the Court about tort allocation of liability here. This is strictly a case of contract allocation. . . . Basically, if there is no contract indemnity or insurance that is owed, the parties stand by their settlement with Mr. Cardwell [the injured worker]. Otherwise, the only issue to be resolved is whether by contract, Transocean is obligated to pick up the settlement that was paid by Ingalls.

¶28. In other words, at the time the parties submitted the case to the trial judge for a decision, the parties already had stipulated that their fault was consistent with the settlement funds paid to Cardwell. Accordingly, the parties did not argue fault during the trial court proceeding or on appeal, and it logically follows that there would be no evidence regarding fault (other than the stipulation) in the record. Thus, a finding unfavorable to Transocean cannot rationally be based on the fact that "neither party has argued fault." Maj. Op. ¶ 10. Neither party argued fault at the trial or appeal level (nor would it be sensible for them to argue fault on a remand) because they already stipulated to the their respective amounts of fault.

¶29. Therefore, while I agree with the majority that this Court is not required to, nor should it, consider the applicability of Section 31-5-41, I disagree with the majority's rationale for this conclusion. The proper rationale for this conclusion is that: 1) Transocean failed to preserve the issue of the applicability of Section 31-5-41 for consideration on appeal, and 2) this Court should not *sua sponte* raise the statute's applicability. It is improper and illogical to base the conclusion that this Court is not required to consider Section 31-5-41 on the fact

19

that the parties stipulated to the issue of tort allocation and therefore did not argue fault. Accordingly, I must specially concur.

**KITCHENS, J., JOINS THIS OPINION. RANDOLPH AND CHANDLER, JJ., JOIN THIS OPINION IN PART.**

**RANDOLPH, JUSTICE, SPECIALLY CONCURRING:**

¶30.    I concur with Presiding Justice Carlson in affirming the insightful and well-reasoned opinion of the trial judge.  At the same time, I agree with Part I of Presiding Justice Graves's specially concurring opinion regarding Transocean's untimely raising of an affirmative defense based on Mississippi Code Section 31-5-41.  *See* Miss. Code Ann. Section 31-5-41 (Rev. 2008).

**CHANDLER, J., JOINS THIS OPINION.  DICKINSON AND PIERCE, JJ., JOIN THIS OPINION IN PART.**