# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00128-COA

**MARY EILEEN SESSUMS**                                                              **APPELLANT**

**v.**

**CHICKEN NUGGET, INC.**                                                             **APPELLEE**

DATE OF JUDGMENT:              06/06/2022
TRIAL JUDGE:                   HON. CALEB ELIAS MAY
COURT FROM WHICH APPEALED:     LEAKE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:       WILLIAM T. MAY
                               RIMEN BRAR SINGH
ATTORNEYS FOR APPELLEE:        ETHAN N. PENN
                               BRENT JOSEPH CARBO
NATURE OF THE CASE:            CIVIL - PERSONAL INJURY
DISPOSITION:                   AFFIRMED - 10/29/2024
MOTION FOR REHEARING FILED:

### BEFORE CARLTON, P.J., McDONALD AND McCARTY, JJ.

### McCARTY, J., FOR THE COURT:

¶1.     A customer was leaving a restaurant when she tripped over two parking curbs placed together. She fell and broke several bones. The customer sued for premises liability, claiming the restaurant breached its duty to keep the parking lot reasonably safe.

¶2.     The restaurant moved for summary judgment, arguing the two parking curbs did not constitute an unreasonably dangerous condition. The circuit court granted summary judgment. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3.     Mary Sessums and her son visited the Chicken Nugget restaurant in Carthage, Mississippi. There were three paths from Chicken Nugget's entrance to the parking lot:

ramps on either side of the entryway or steps directly in front of the doors. The front steps led straight into a parking space that had been blocked off, but vehicles were able to park on either side.

¶4. To block off the front spot, Chicken Nugget put two parking curbs in that space, "approximately fifteen (15) feet straight out from the bottom" of the steps. The curbs were two back-to-back concrete blocks measured "to be twenty (20") inches wide" and "six and a quarter inch high." The curbs and area immediately surrounding them were painted yellow. According to Sessums, there was "a foot on each side" between the curb and adjoining parking spots for customers to walk around it.

¶5. Sessums testified that she frequented the restaurant about "once every month" for years prior to the accident, and she "always went up the ramp" and "usually down the ramp." On the day of the accident, she and her son made their way to the entrance using one of the side ramps. But when the pair left the restaurant, they went down the front steps to the parking lot.

¶6. Sessums further testified that after getting down the steps, she "saw the concrete thing there and . . . stepped over" with her left foot. But as she was stepping over with her right foot, a car drove past and distracted Sessums. Her "right foot caught the second concrete block," and then she fell.

¶7. Her son witnessed the fall and ran back inside the restaurant for help. The owner of Chicken Nugget came outside and provided aid to Sessums until an ambulance arrived.

2

Sessums received emergency medical attention in Jackson for broken bones in her leg and foot. She was in the hospital for several days and ultimately underwent surgery.

¶8.     Sessums subsequently filed a premises liability action against Chicken Nugget Inc. in the Leake County Circuit Court. She alleged the restaurant created an unreasonably dangerous and unsafe condition in the restaurant's parking lot. More specifically, she claimed Chicken Nugget essentially created a trap for patrons by "sandwiching" the two curbs together in the area leading to the stairs. According to Sessums, "if it would have been one block, I would have made it over, but I—and then I went down."

¶9.     Chicken Nugget moved for summary judgment, claiming Sessums did not provide evidence that the parking lot curb was unreasonably dangerous. The circuit court determined the two curbs, which Sessums admittedly saw, did not constitute a dangerous condition. As a result, the court granted summary judgment in Chicken Nugget's favor, and Sessums appeals.

**STANDARD OF REVIEW**

¶10.    This Court reviews the grant of a motion for summary judgment de novo, "viewing the evidence in the light most favorable to the non-moving party." *Loving v. MS Eye Care P.A.*, 381 So. 3d 1111, 1113 (¶6) (Miss. Ct. App. 2024). "A grant of summary judgment will be upheld only when, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact." *Forbes v. Gen. Motors Corp.*, 993 So. 2d 822, 824 (¶7) (Miss. 2008); *accord* MRCP 56(c). "[S]ummary judgment 'is appropriate when

3

the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Karpinsky v. Am. Nat. Ins. Co.*, 109 So. 3d 84, 89 (¶11) (Miss. 2013) (quoting *Buckel v. Chaney*, 47 So.3d 148, 153 (¶10) (Miss. 2010)).

## DISCUSSION

¶11.    On appeal, Sessums argues summary judgment was improper because the two parking curbs she tripped over were an unreasonably dangerous condition. Specifically, she claims the back-to-back placement of the two parking blocks created an unreasonably dangerous condition because "she neither appreciated nor anticipated it being a double barrier until the moment she fell."

¶12.    "Premises liability is a 'theory of negligence that establishes the duty owed to someone injured on a landowner's premises as a result of "conditions or activities" on the land[.]'" *Venture Inc. v. Harris*, 307 So. 3d 427, 432 (¶19) (Miss. 2020) (quoting *Johnson v. Goodson*, 267 So. 3d 774, 777 (¶11) (Miss. 2019)). To succeed on a premises liability claim, the plaintiff is required to show "(1) a negligent act by the defendant caused the plaintiff's injury; or, (2) the defendant had actual knowledge of a dangerous condition, but failed to warn the plaintiff of the danger; or, (3) the dangerous condition remained long enough to impute constructive knowledge to the defendant." *Stanley v. Boyd Tunica Inc.*, 29 So. 3d 95, 97 (¶9) (Miss. Ct. App. 2010) (quoting *Byrne v. Wal-Mart Stores Inc.*, 877 So. 2d 462, 465 (¶5) (Miss. Ct. App. 2003)).

¶13.    "Mississippi applies a three-step process to determine premises liability." *Venture*, 307 So. 3d at 433 (¶19) (quoting *Leffler v. Sharp*, 891 So. 2d 152, 156 (¶10) (Miss. 2004)). "The first step consists of classifying the status of the injured person as an invitee, licensee, or a trespasser." *Id.* (quoting *Sharp*, 891 So. 2d at 156 (¶10)). Then, the second step is to identify what duty was owed to the injured party, and the "[t]he third step is to determine whether this duty was breached by the landowner or business operator." *Id.* (quoting *Sharp*, 891 So. 2d at 157-59 (¶¶12, 22)).

¶14.    Here, both parties agree that Sessums was an invitee on Chicken Nugget's premises. It is well-settled law in Mississippi that "the owner or operator of business premises owes a duty to an invitee to exercise reasonable care to keep the premises in a reasonably safe condition." *Lefler v. Wasson*, 295 So. 3d 1007, 1009 (¶8) (Miss. Ct. App. 2020) (quoting *Jerry Lee's Grocery Inc. v. Thompson*, 528 So. 2d 293, 295 (Miss. 1988)). But "business operators are not insurers against all injuries." *Stanley*, 29 So. 3d at 97 (¶9). An "invitee is still required to use in the interest of his own safety that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar circumstance." *Venture*, 307 So. 3d at 433 (¶24) (quoting *Fulton v. Robinson Indus. Inc.*, 664 So. 2d 170, 175 (Miss. 1995)).

¶15.    The duty owed to invitees "requires the business owner to take certain steps to protect its customers from 'dangerous conditions' on the premises of which the business is or should be aware." *Lefler*, 295 So. 3d at 1009-10 (¶8). Crucially, "[w]hile the duty requires protecting

5

customers from dangerous conditions, it is *not unlimited* in scope." *Id*. at 1010 (¶9) (emphasis added).

¶16. We have addressed similar cases regarding curbs and sidewalks in years past and have explained that many normally encountered dangers do not rise to the level of a "dangerous condition." Mississippi has long recognized "hazards that are similar to undamaged thresholds, *curbs*, and steps, which are common architectural features for buildings and *parking lots*, may properly be found not to be unreasonably dangerous." *Benson v. Rather*, 211 So. 3d 748, 755 (¶23) (Miss. Ct. App. 2016) (emphasis added). "Undamaged thresholds are common architectural features for buildings, not unreasonably dangerous conditions." *Martin v. Trustmark Corp.*, 292 So. 3d 245, 249 (¶14) (Miss. Ct. App. 2019) (internal quotation marks omitted). Likewise, "normally encountered dangers such as cur[b]s, sidewalks, and steps are not hazardous conditions." *Lefler*, 295 So. 3d at 1010 (¶9).

¶17. In *Lefler*, we looked at a premises liability claim where a renter sued the homeowner after she tripped and fell on a brick path. *Id*. at 1008 (¶1). The renter claimed the homeowner was negligent for failing to keep the premises in a reasonably safe condition because a brick in the path was loose and dislodged. *Id*. at 1009 (¶6). We "held that 'no . . . property owner can be expected to maintain its sidewalks in a perfectly level condition, and where the defect consists of some slight variation between two adjoining paving blocks, no liability is imposed." *Id*. at 1010 (¶9) (quoting *Bond v. City of Long Beach*, 908 So. 2d 879, 881-82 (¶7) (Miss. Ct. App. 2005)). We affirmed summary judgment because the "sidewalk and stairs

6

remain within the general premise such that they are not hazardous conditions." *Id*. at (¶12).

¶18.    In another case, a patron left a Chick-Fil-A and fell off a curb as she was walking to her car. *Thompson v. Chick-Fil-A Inc.*, 923 So. 2d 1049, 1051 (¶1) (Miss. Ct. App. 2006). But she admitted "she was not watching where she was going." *Id*. at 1052 (¶12). And the proof showed "the curb was unbroken, unlittered, dry and otherwise unobstructed." *Id*. at 1052 (¶13).[1] Accordingly, we affirmed the grant of summary judgment, finding the curb was not a dangerous condition. *Id*.

¶19.    Furthermore, like a curb to a sidewalk, our Supreme Court has also determined a parking curb is not a dangerous condition. *Kroger Inc. v. Ware*, 512 So. 2d 1281, 1282 (Miss. 1987), *overruled on other grounds by Tharp v. Bunge Corp.*, 641 So. 2d 20, 25 (Miss. 1994).[2] In *Ware*, a woman tripped on a "parking lot curb" while walking to her car in a grocery store's parking lot. *Id*. The patron "was a frequent customer at the Kroger," visiting the store "two or three times a week for several years," and "was aware of the curb." *Id*. The curb was "six inches high and six inches wide, painted 'traffic orange,' located twelve feet

---

[1] As further support in *Thompson*, we referenced a previous case from our Supreme Court that determined a "curb was not inherently dangerous and that the landowner could not reasonably anticipate that the curb's height would cause a person to fall or trip on her way to the parking lot" where "the plaintiff exited a store and fell off a curb that was elevated seven and one-half inches above the parking lot." 923 So. 2d at 1053 (¶15) (citing *Stanley v. Morgan & Lindsey Inc.*, 203 So. 2d 473, 477 (Miss. 1967)).

[2] Although *Ware* has been overruled in part, it was done because our Supreme Court subsequently abolished the "open and obvious" doctrine as a complete defense to premises liability claims. *See Tharp*, 641 So. 2d at 22. The remainder of *Ware* was not overruled. *See Thompson*, 923 So. 2d at 1052 (¶12) (citing *Ware*, 512 So. 2d at 1282); *Venture*, 307 So. 3d at 433 (¶23) (citing *Ware*, 512 So. 2d at 1282).

from the sidewalk, and used to control parcel parking." *Id*. She testified "she was looking ahead as she walked" and "stepped across the curb with one foot," and then she "fell as she attempted to step across [the] curb with [her] other foot[.]" *Id*.

¶20. Our Supreme Court found that the woman "encountered a condition, which was permanent, in place, known, and obvious—a factual setting bearing no resemblance to cases in which we have found a jury question to exist" for premises liability. *Id*. As a result, the Supreme Court reversed the award of damages. *Id*.

¶21. Similar to the brick pathway in *Lefler*, there is a slight variation between the two adjoining concrete curbs in our present case. *See Lefler*, 295 So. 3d at 1009 (¶6). And like the curb at the Chick-Fil-A, the two curbs here were "unbroken, unlittered, dry[,] and otherwise unobstructed." *Thompson*, 923 So. 2d at 1052 (¶13). Comparable to the parking lot curb at the Kroger, in this case the curbs and area around them were painted yellow. *See Ware*, 512 So. 2d at 1282. We find Chicken Nugget's double-curb remains in the continuum of "normally encountered dangers" like an uneven sidewalk, a raised sidewalk curb, or a single parking barrier.

¶22. Additionally, like *Ware*, Sessums was a frequent customer of the Chicken Nugget and was aware of the parking curb. *See Ware*, 512 So. 2d at 1282. And as in both *Thompson* and *Ware*, Sessums admitted she was distracted and looked away from where she was stepping at the time her foot got caught, leading to her fall. *See Thompson*, 923 So. 2d at 1052 (¶12); *Ware*, 512 So. 2d at 1282. As a regular visitor to the restaurant, Sessums admitted she saw

8

the curb, acknowledged she successfully stepped over the curb with her left foot first, and tripped only after she paused to look up while her right foot was mid-step. Because the curbs were not concealed, they were "conditions 'normally encountered by business invitees' that do not warrant the imposition of liability." *Lefler*, 295 So. 3d at 1010 (¶10).

¶23. To the extent Sessums further argues that "sandwiching" the two curbs together created a "crevice," we find this does not transform the curbs into a dangerous condition. "[I]t is impossible to envision this" parking curb "as creating a *danger* of some kind, in some way different from thousands" of other curbs. *McGovern v. Scarborough*, 566 So. 2d 1225, 1228 (Miss. 1990). Sessums failed to meet her burden as a plaintiff responding to a summary judgment motion to show that the placement of two back-to-back curbs was an unreasonably dangerous condition.

**CONCLUSION**

¶24. Viewing the record in the light most favorable to Sessums, we find she failed to establish that a genuine dispute of material fact exists as to whether the parking lot curb was an unreasonably "dangerous condition." Sessums did not provide evidence showing that the back-to-back curbs in Chicken Nugget's parking lot were a type of condition that was not usually encountered and that rose to the level of an unreasonably dangerous condition. Therefore, we affirm the circuit court's order granting summary judgment in favor of Chicken Nugget Inc.

¶25. **AFFIRMED.**

9

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. WEDDLE, J., NOT PARTICIPATING.**