HARLEY METCALF, EXECUTOR, v. YAZOO & MISSISSIPPI VALLEY
RAILROAD COMPANY.

[52 South. 355.]

RAILROADS. *Passengers. Persons awaiting trains. Temporarily leaving depots.* Code 1906, §§ 4854, 4867.

Under Code 1906, §§ 4854, 4867, requiring railroad companies to maintain depots and keep them open for the reception of passengers at least one hour before the arrival of trains, a person who goes into a passenger depot within said time, for the purpose of placing his baggage there and taking passage on a train due within the time, becomes a passenger, and does not forfeit any right by temporarily leaving the premises, although he intended to so leave when he entered.

FROM the circuit court of, first district, Bolivar county.
HON. JAMES M. CASHIN, Judge.

Metcalf, executor of the will of Conly, deceased, appellant, was plaintiff in the court below, and the railroad company, appellee, was defendant there. The suit was instituted by Conly in his lifetime, he died before the trial, and the suit was revived in the name of his executor. From a judgment, predicated of a peremptory instruction, in defendant's favor, plaintiff appealed to the supreme court. The opinion of the court states the facts.

*Shields & Boddie,* for appellant.

In this case the appellant was entitled to recover, first, if appellee company owed decedent a duty; secondly, unless the decedent was debarred of recovery by reason of contributory negligence. The court below held that the question of contributory negligence was one for the jury, but that the appellee

company owed decedent no duty whatever,' and excluded the appellant's evidence and instructed the jury to find for the railroad company.

It is clear that under all the authorities, the question of contributory negligence in this case was one for the jury.

As to whether or not the company owed the decedent any duty whatever, other than the duty to abstain from wilful wrong, we say that under our form of pleading, a declaration must contain only a statement of the facts constituting a cause of action. The declaration in this case did contain a statement of facts constituting a cause of action. The railroad company, by not demurring to the declaration, recognized this fact. While we contend that appellant's decedent was a passenger, still, even though he were not technically a passenger under the facts set forth in the declaration and proved in evidence, clearly the railroad company owed appellant's decedent 'a duty other than to abstain from wilful wrong. Whether that duty amounted to that high degree of care owing to a passenger, or whether it did not rise to that height, still, the railroad company owed appellant's decedent a duty which it did not discharge.

To those having business with a railroad, the company owes special obligations of duty different from those due the general public. To the latter it owes nothing beyond the observance of the duties of good neighborhood; among these is the doing of no wilful or wanton injury, and of not maintaining on or near the platform or approaches to which the public may be expected to go, any unseen trap or pitfall from which personal injury is likely to ensue. *Montgomery, etc., R. Co. v. Thompson,* 77 Ala. 448, 54 Am. Rep. 72.

The degree of care is not fixed simply by the relation of carrier and passengers. It is measured by the consequences which may follow the want of care. The appellant's decedent was, as we contend, a passenger. 6 Cyc. 536 and notes.

As stated above, whether the plaintiff's decedent was technically a passenger or not, the defendant company owed him a duty not to maintain on or near the platform or approaches to which the public may be expected to go, any unseen trap or pitfall from which personal injury was likely to ensue. *Lepnic v. Gaddis,* 72 Miss. 200.

The facts in this case are almost identical with those in the case of *Yazoo, etc., R. R. Co. v. Lane,* decided by this court June 15, 1908. Lane testified: "I fell into a hole, and struck my head against something, and was knocked unconscious for several minutes." In this case Conly testified that he was going out of the depot and fell into a hole and was knocked unconscious for several minutes. There was a plank across the ditch that Lane fell into, hence he did not see it. There was a ditch under the plank on which Conly walked into the depot, hence Conly did not see the ditch. There were no lights to show Lane where the ditch was, nor were there any lights to show Conly where the ditch was. In both cases the court will observe that the injured parties were afflicted alike, suffering severely from nervousness and headache.

Conly was not legally required to be on the lookout for pitfalls; he was there by implied invitation. *Alabama, etc., R. Co. v. Godfrey,* 47 South. 185; *Yazoo, etc., R. Co. v. Lane, supra; Lepnic v. Gaddis,* 72 Miss. 200.

Conly had a mileage book and was entitled to ride on appellee's trains whenever he chose, so long as his mileage book lasted. He went to the depot in and about his passage on appellee's train; and while on the premises of appellee, he was vested with all the rights of a passenger or customer. *Yazoo, etc., R. Co. v. Lane,* 46 South. 959.

A man went to the depot to meet his wife. While seeking a retired spot, he fell in a hole. The court held him to be a customer of the road. 5 Am. Eng. Ency. of Law, 573.

This suit is in tort and not in contract.    The appellee pleaded not guilty.    It is manifest that whether or not Conly was a passenger under the facts alleged and proved, the railroad company was guilty of a breach of a duty for which it should be held liable.    Certainly appellant is entitled to recover in this case if the railroad company is liable at all.    Under our law all a plaintiff is required to do in a declaration is to give a statement of the facts in ordinary and precise language and it shall not be an objection to maintaining an action that the form thereof should have been different.    Code 1906, § 729.

It was the duty of the railroad company under the facts in this case to maintain safe approaches to its depot grounds and it is liable if one who is invited there is injured by reason of its failure so to do whether the person be a passenger in the technical sense or not.

*Mayes & Longstreet,* for appellee.

The relation of passenger and carrier did not exist between Conly and the railroad company.    To give rise to the relation of passenger and carrier there must not only be an intent on the part of the former to avail himself of the facilities of the latter for transportation, but also an express or implied acceptance by the latter of the former as a passenger.    Until there is an acceptance, that is, until the express or implied knowledge of the carrier or his employer, the person seeking to become a passenger has indicated his intention to become a passenger which intention has been in some way acquiesced in, at least to the extent of not refusing transportation, the relation does not arise even though the purpose of the person attempting to become a passenger is to pay fare when required.    *    *    *    But the mere fact of intention to go on board a car, which intention has not been by acts or otherwise indicated to the servants of the railroad company, does not render the person having such in-

tention a passenger, although he may be entitled to transportation.    6 Cyc. 538.

Where a person with a *bona fide* intention of taking passage upon a train goes to the station within a reasonable time prior to the hour of departure of the train and there, either by purchase of ticket or in some other manner indicates to the carrier his intention to take passage, from that time on, while waiting for a train, he is entitled to the rights and privileges of a passenger.  *  *  *  But unless some contract, either express or implied from the circumstances, can be shown, it is difficult to see how the relation can be held to be established.  The mere intention to take passage upon the carrier's vehicle certainly ought not to have that effect under any circumstances.  But if the intention and act of the party combined are such as to give rise to an implied contract to carry, the duty and obligation of the carrier as such at once begins.  But so long as the party merely entertains the wish or intention no obligation has arisen on either side, and he is at liberty to change the intention at any time.    Hutchinson on Carriers, §§ 1006, 1015.

The relation of passenger and carrier begins when one puts himself in the car of the carrier or directly within its control with a *bona fide* intention of becoming a passenger and is accepted as such by the carrier.    5 Am. & Eng. Ency. of Law (2nd ed.), 488; *Spannagle v. Railway Co.,* 31 Ill. App. 460; *Webster v. Lynchburg R. R. Co.,* 16 Mass. 298; *Allender v. Railway Co.,* 37 Iowa, 264.

Both parties must enter into and be bound by the contract. The passenger may do this by putting himself into the car of the railroad company to be transported, and the company does it by expressly or impliedly receiving him and accepting him as a passenger.    The acceptance of the passenger need not be direct or expressed.    There must be something from which it may be fairly implied.    One does not become a passenger until

he puts himself in charge of the carrier and has been expressly or impliedly received as such by the carrier. *Illinois, etc., R. Co. v. O'Keith,* 61 Am. St. Rep. 68; Elliott on Railroads, 1581; *Bricker v. Railway Co.,* 132 Pa. St. Rep. 1; *Chicago v. Jennings,* 60 N. E. 818; *Bricker v. Caldwell,* 18 Atl. 983.

One who goes upon the premises of a railroad station from curiosity or for the transaction of business not with the company, is not a passenger. *Giles v. Railroad Co.,* 98 Dec. 317; *Railway Co. v. Schwindling,* 47 Am. Rep. 706; *St. Louis R. Co. v. Fairbow,* 48 Ark. 441; *Andrews v. Railroad Co.,* 86 Miss. 133; 5 Am. & Eng. Ency. of Law, 488.

Can it be seriously charged that in the light of the authorities, that Conly was a passenger? He started out to Wynn's store upon private business and stopped by the depot, not for the purpose of taking passage, not to wait for a train, and, in short, for no purpose which could be construed as offering himself as a passenger, and it surely cannot be claimed that not only had he offered himself as a passenger, but also that he had been accepted as such by the railroad company. It was not as though he had just disembarked from the train and was passing through the depot. When, we ask, did he become a passenger, and on what grounds can the claim be made? The possession of the ticket was not sufficient. The mere intention to return from Wynn's store later and enter the depot and wait for the train was not sufficient; the mere use of the waiting room for his convenience before he returned to begin his trip, was not sufficient. Had his journey begun? Can it be said that he was a passenger when he was actually leaving the premises of the railroad on private business? Does the fact that the railroad did not refuse to permit his hand baggage to be left in the depot make him a passenger? It is to be borne in mind that he simply left his hand baggage there, not even checked. Does the railroad company invite the people to leave articles in the waiting room and

leave them there unguaded while they depart to go elsewhere? No railroad company, no matter how liberal in its accommodation, goes to the extent of encouraging or sanctioning any such practice.

It is to be borne in mind that before Conly entered the depot, and while there, he had in mind as his primary and guiding purpose a desire to see Wynn at his store, and was merely making a convenience of the depot. It was not necessary for him to enter the station to reach Wynn's store, but he chose the indirect way through preference.

All that is necessary to determine whether or not Conly was a passenger is to make application of the principles above stated and such a test will clearly demonstrate that the conditions did not exist which would constitute the relation of carrier and passenger. If it be held that Conly was a passenger, then there would be no limit or place where it could be said that a party became a passenger.

The judgment should be affirmed because the declaration is under one contract, the suit being against the company for liability under the contract of carrier and passenger; and as Conly was not a passenger, even if the railroad company should be liable in tort, appellant could not recover under this suit.

Railroad companies are under no obligation to render their stations safe for persons who resort their merely for their own convenience and not for the transaction of business with the company.

The general rule that the owner or occupant of land is under no obligation to keep his premises in a suitable condition for those who go there for their own convenience or pleasure, and who are not expressly or impliedly invited by the owner or occupant to go thereon, applies equally to railroad companies with regard to their stations and it is held that such companies are under no obligation to render their stations, etc., safe for the

persons who resort there merely for their own pleasure or convenience and not for the transaction of business with the company. Their only obligation to such persons is to avoid injuring them through wilful or wanton acts. 26 Am. & Eng. Ency. of Law, 510; 3 Elliott on Railroads (1st ed.), 1966; 33 Cyc. 62.

Conly's business was no more connected with the railroad company than if he had gone there to write a letter, or by appointment had met a party there to discuss or transact private business.

We have already shown that Conly was at the depot purely and entirely upon business of his own and for his own convenience and that, therefore, his case falls within the principles just announced. The fact that it was his intention later to enter the depot upon business connected with the company, is not sufficient to enable him to make claim that he was at that time upon the premises for the transaction of business with the railroad company. The fact that the train was soon to arrive had nothing to do with the abstract principle. He had not put himself under the protection of the railroad company, and intended leaving the premises for private business and to return later and become a passenger. *Gilles v. Railroad Co.,* 98 Dec. 317; *Railway Co. v. Schumberg,* 47 Am. Rep. 706; *Heinlin v. Railroad Co.,* 9 Am. St. Rep. 676; *Railway Co. v. Marion,* 27 Am. & Eng. Cases, 132; *Railway Co. v. Lucas,* 89 Miss. 411; *Railway Co. v. Bingham,* 23 Am. Rep. 751; *Railway Co. v. Thompson,* 54 Am. Rep. 72.

MAYES, C. J., delivered the opinion of the court.

In 1908 J. B. Conly instituted suit against the Yazoo & Mississippi Valley Railroad Company for the purpose of recovering damages for injuries alleged to have been sustained by him, some time in September of that year, by falling into an ex-

cavation made by the company around its depot at Duncan, Miss., which, it is claimed, was negligently left open without warning light or safety guard. Conly alleges that he fell while at the depot for the purpose of taking passage on a train, due about 10 or 15 minutes after he entered the depot, and about 7:20 p. m. After the institution of the suit Conly died, and the suit is prosecuted by the executor.

· The facts· are substantially as follows: Conly left Round Lake, Miss., in a buggy about 5 o'clock, and drove to the town of Duncan, intending, as it seems, to take passage on the 7:20 p. m. south-bound passenger train on defendant's road. After arriving at the town of Duncan he proceeded to the hotel to get supper. After supper, and 15 or 20 minutes before the train was due, he left the hotel for the·depot, with his grip in his hand and a mileage book in his pocket, having in view the purpose of taking passage on the train when it should arrive. It was the double purpose of Conly to deposit his grip in the waiting room of the depot in preparation of his contemplated trip, and then to go over to the store of a Mr. Wynn, which was but a short distance from the waiting room, as he desired to speak to Wynn on a matter of business. Conly proceeded to the depot, and entered the waiting room safely, and after depositing his grip turned to go out to see Wynn, and as he stepped out of the door fell into an excavation in front of same, and sustained painful injuries, at least. It appears that the excavation was made by reason of the fact that the company was repairing its depot. The excavation seems to have been immediately in front of the waiting room entrance, and from three to five feet deep, and some two or three feet wide. Across this trench, and for the purpose of getting into the waiting room, some planks were placed leading into the door; but they were unguarded and without warning light. Conly said he could not see the excavation when he entered, because there was no

light. As he entered, he says the light in the waiting room was shining in his eyes and blinded him, and when he came out the light was behind him, and the excavation so close to the door that, while it was bright enough to make the gravel walk visible, it did not light up this excavation. It is not our purpose to intimate how serious were the injuries Conly received. That question is left to the jury. The question before this court is simply whether or not the facts make out a case of liability on the part of the company. The court below gave a peremptory instruction to find for defendant, holding that Conly was not a passenger at the time of the injury, and from this action of the trial court an appeal is prosecuted by the executor.

Let us first review the statutes of the state on the subject of the railroad's duty in respect to its depots and waiting rooms. By section 4854 it is made the duty of every railroad to establish and maintain such depots as shall be reasonably necessary for the public convenience; and by section 4867 it is made the duty of every railroad to keep rooms open for the reception of passengers at least one hour before the arrival, and one half hour after the departure, of all passenger trains. Thus it is that the law requires that the railroads shall have depots, and that they shall make them comfortable and accessible at reasonable times to intending passengers. It would be useless for the statute to require the railroads to keep rooms open for the reception of passengers an hour before the arrival of the train, unless intending passengers could make lawful use of the rooms, within that limit of time, for any necessary or convenient purpose which is in furtherance of the *bona fide* intention to become a passenger. This is the manifest purpose of the statute, and the very object of having the waiting room open is to receive intending passengers and their hand baggage. When an intending passenger avails himself of the convenience which the law has established for his benefit, and which the railroad must

:provide, within a reasonable time before the arrival of the train his object being to facilitate and further his purpose to take passage, even though it be to place his hand baggage in the waiting room as a matter of convenience to himself and in furtherance of his ultimate object, such person, while on the depot grounds or in the waiting room, is a passenger, and entitled to all the protection of a passenger, though he have a purpose to leave again before the arrival of the train on a matter of convenience, pleasure, or business.    To hold otherwise would place the rights of persons accepting the conveniences provided by law for their use in a precarious and uncertain condition under the law, and relieve railroads from a duty which they stand under to the traveling public, for which no sensible or just reason can be assigned.    It is a matter of common knowledge that intending passengers use the waiting rooms for depositing their hand satchels, and such like, many minutes before a train is due to arrive.    Some may loiter around the grounds and the platforms, while others may find it convenient and necessary to cross a street on a matter of business or pleasure; but because of this it is none the less the duty of a railroad to keep its grounds and rooms in a safe condition, both for the intending passenger who imprisons himself within the four walls of the waiting room and the passenger who is on the grounds for the purpose of relieving himself from the burden of his baggage in order that he may go out for some purpose, it being certain that both come to the depot for the ultimate purpose of taking a train.

It is argued by counsel for appellee that, before there can arise the relation of carrier and passenger, there must not only be an intent on the part of a person to become a passenger and to avail himself of the facilities offered by the carrier for transportation, but there must be an express or implied acceptance by the carrier of the person so intending as a passenger.    Many

authorities are cited to sustain this proposition, and we find no
fault with the law there announced; but the question is, What
constitutes this acceptance? Must the person go to the agent of
the carrier and formally announce his arrival and intention to
take passage? Must the agent then and there formally accept
such person, in order to establish the relation? Clearly no such
formality is required, in view of the fact that it is the lawful
right of every citizen to establish this relation, with or without
the consent of the railroad. The true rule is that, when the
railroad has opened its waiting room for the reception of pas-
sengers as required by law, and any person intending to take
passage on the train next to come has resorted to the depot in
lawful furtherance of that purpose and in a proper condition to
be received as a passenger, there arises from these acts, as a
matter of law, the relation of carrier and passenger.

The contention of counsel for appellee that the relation of
carrier and passenger could not arise until after Conly had
entered the depot grounds on his return from Wynn's store is
unsound and too narrow. Conly had gone to the depot to deposit
his satchel in the waiting room only fifteen minutes before the
arrival of his train. His resort to the depot was for a lawful
purpose and in furtherance of his intention. The depot was
open for the reception of passengers and for their convenience.
If he had hunted up the agent, and told him that he contem-
plated taking the next train, and desired to place his baggage
in the waiting room and go out to see Wynn, the agent would
doubtless have told him that the waiting room was there for
the full convenience of one situated as he was. He was making
the very use of the waiting room that the railroad and the law
designed should be made of it. Conly was no loiterer on the
depot grounds. He was no idler or trespasser; but he was
there on the lawful business of an intending passenger.

We have found no case precisely like the case now on trial, but in the note to the case of *Alabama, etc., Ry. Co. v. Godfrey,* 130 Am. St. Rep. 76, will be found many authorities discussing this subject and sustaining the principle here announced. In section 997, vol. 2, Hutchinson on Carriers, it is said: "It would be impossible to frame a clear, precise, legal definition of the word 'passenger,' which would embrace all its essential elements." In 6 Cyc. p. 536, it is said that the relation of carrier and passenger exists, as to railroad companies, "not merely when the passenger enters the train with the ticket already purchased, giving him a contract right to ride, but when he enters upon the premises of the carrier, with intention to take a train in due course."

The case of *Andrews v. Yazoo & Mississippi Valley Railroad Company,* 86 Miss. 129, 38 South. 773, is no authority for any question involved in this case. In the *Andrews case* it is shown that Andrews went to the depot more than two hours before the train he desired to take was due. He went into the private office of the agent, and requested the privilege of doing some writing on account of his own affairs, thus going to the depot and making use of its private office as an office in which to transact some business of his own. While so engaged in his own business in the private office of the depot, the depot agent and Andrews got into a personal difficulty about a private matter, and the court stated in the opinion that Andrews had gone to the depot in order that he might have a comfortable and convenient place in which to transact his own business, and was not, therefore, a passenger; that Andrews was knowingly violating the rules of the company, and could not claim its protection under the facts of that case. But the very object of Conly's visit to the depot was in furtherance of his purpose to take passage. Everything he did while there was in accordance with

the rules of the company, and he was merely availing himself of those facilities which the company had placed there for the use of passengers, and which, under the law and rules of the company, he had a right to use.

In view of what we have heretofore said, we deem it unnecessary to further discuss the question argued on behalf of appellee.

*Reversed and remanded.*