## GULF, M. & N. R. Co. *v.* SPARKMAN.

(Division A. Jan. 3, 1938.)

[177 So. 760. No. 32895.]

Flowers, Brown & Hester, Robert Burns, Jr., and F. W. Bradshaw, all of Jackson, for appellant.

458

**A. M. Warwick,** of Carthage, for appellee.

Argued orally by **Clyde Hester**, for appellant, and by **A. M. Warwick**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

Appellee recovered judgment in the sum of $2000 against the appellant, railroad company, in the circuit court of Leake county, for injuries received by him be-. cause of the alleged negligence of the company in the derailment of one of its freight trains at the flag station of Tuscola on its line of railroad between Jackson and Union, Miss.

The evidence disclosed that on July 18, 1935, the appellee went to this flag station with the idea of seeing the company's new stream-line train, known as "The Rebel," on its first run, and also for the purpose of taking passage on the train in the event it should be going toward the station of Lena. This particular train was not scheduled to run, nor did it run, either on that day or on the next day, but there was a general rumor being circulated in the community where the appellee lived to the effect that the train would run, that afternoon, although appellee had not been able to ascertain

from this rumor in what direction the train was to run. It is shown that no agent or employee of the railroad was in any manner responsible for the circulation of this rumor. Appellee arrived at Tuscola between 1:30 and 2:00 o'clock p. m., and waited at the station. The company kept no agent there, but the trains received and discharged passengers at that point on being signaled to do so. The next passenger train was scheduled to arrive at 5:36 o'clock p. m., and while appellee was standing near the station house a through freight train arrived at approximately 1:48 p. m., and several of its cars derailed and completely demolished the small station building, with the result that appellee was injured by some of the flying timbers.

The derailment was due to the fact that the switch of the spur track had been unlocked or otherwise opened, but there was no evidence to show that any employee of the company was responsible therefor. It is shown, however, that the switch was securely locked when examined by the section foreman between 3:30 and 4:00 o'clock on the previous afternoon, and that no train had used the spur track in the meantime. It was further shown that keys for unlocking the switch were generally distributed among employees having occasion to use them; that at least two or three dozen of these keys were misplaced or lost every year; and that occasionally some of them were turned in by persons not in the employ of the company.

All the facts and surrounding circumstances in connection with the derailment of the train were placed in evidence by the appellant, and it was clearly shown that the train crew in approaching the station had no more reason to suspect what was about to occur than did the appellee. The engine of the train and one or two of the cars passed the switch without being derailed, but several of the cars immediately behind these derailed and ran into the station building, resulting in the injury complained of as aforesaid. The train was running fast

at the time, but the proximate cause of the derailment was shown to be the fact that the switch had been unlocked or otherwise opened by some person whose identity was unknown. Tuscola is not an incorporated town or village, and it cannot be said that the train was running at an unlawful or reckless rate of speed under the circumstances.

It is contended by appellee that he was for all intents and purposes a passenger, and that the appellant owed him a high degree of care; that there was no posting of the hours of arrival and departure of the trains at this station whereby he could have determined when he should be there for the purpose of taking passage.

Section 7080, Code of 1930, provides that every railroad shall keep rooms open for the reception of passengers, and shall keep them properly heated and lighted when necessary, at all passenger stations at least one hour before the arrival, and one-half hour after the departure, of passenger trains. It was held in the cases of Metcalf v. Yazoo & M. V. R. R. Co., 97 Miss. 455, 52 So. 355, 28 L. R. A. (N. S.), 311, and Davis v. Day, 127 Miss. 140, 89 So. 814, that persons arriving at passenger stations within one hour before the arrival of a train for the purpose of taking passage thereon, and persons disembarking from a train and remaining at the station for half an hour thereafter, are to all intents and purposes to be treated and considered as passengers. The Court of Appeals of Kentucky, in construing a statute similar to ours, in the case of Illinois C. R. R. Co. v. Laloge, 113 Ky. 896, 69 S. W. 795, 796, 62 L. R. A. 405, said that: "we have in this state what may be regarded as legislative construction of the length of time that should be considered reasonable for the carrier to be required to look out for, and safeguard, its passengers before they have taken actual passage." Our court has not passed on the question as to whether or not our statute in this regard would be applicable to the rights of intended passengers at stations where no agent is

kept to perform the duties required by it, or at stations where the arrival and departure of trains are not posted. Nor is it necessary to a determination of this case that we now decide that question. Suffice it to say, there was no duty to post the fact that a certain train was not to run, which had never run, and which was not scheduled to run.

But even if it should be held that the appellee was for all intents and purposes a passenger, and not a mere licensee, at the time he was injured, the fact remains that under the state of facts hereinabove set forth it would be the merest conjecture into the realm of possibilities to hold that there was any proof of negligence on the part of the servants of the appellant in the operation of the train that proximately caused or contributed to the jury, or that any of its servants were in any manner responsible for the switch being unlocked or otherwise opened and allowed to so remain, or in failing to discover such condition at the place in question on its line of railway far removed from where it was required to keep an agent on duty, where it is shown that a reasonable supervision was exercised by the company through its section foreman to ascertain and preserve the safety of the track for the operation of trains. There was no duty to constantly watch the track to insure its safety for the purpose of avoiding unforeseen accidents.

The correct rule to be deduced from all the authorities is that in order to recover for an injury to a person or property, by reason of negligence or want of due care, there must be shown to exist some obligation or duty toward the plaintiff which the defendant has left undischarged or unfulfilled. This is the basis on which the cause of action rests. The prima facie presumption of negligence which arises under section 1580, Code of 1930, must yield to the proven facts, all of which were fully shown in evidence and clearly exonerated the appellant of any negligence. Appellee was not on the track and was not seen by the train crew to be in a place

of peril as the train approached. He was on the station grounds, and they had no reason to anticipate that the train would leave the track and cause injury to him, and it is self-evident that there was nothing they could do to prevent injury to him after the derailment of the cars, from in the middle of the train, over which they had no control, had begun. The derailment was merely an accident, which could not have been foreseen by the exercise of due care.

Reversed, and judgment here for the appellant.