# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CT-01757-SCT

*KATERINA GALANIS AND CHRISTINA GALANIS*

*v.*

*CMA MANAGEMENT COMPANY FORMERLY d/b/a AMBLING MANAGEMENT COMPANY, AMBLING MANAGEMENT COMPANY, LLC, FORMERLY d/b/a AMC ACQUISITIONS, LLC, AMBLING MANAGEMENT COMPANIES, INC. AND ALTA MSU, LLC*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/28/2012 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| TRIAL COURT ATTORNEYS: | SEAN R. GUY |
| | SEAN J. TINDELL |
| | DAVID L. SANDERS |
| | JOHN D. BRADY |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | SEAN R. GUY |
| | ZACHARY M. BONNER |
| | SEAN J. TINDELL |
| ATTORNEYS FOR APPELLEES: | DAVID L. SANDERS |
| | JOHN D. BRADY |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 10/08/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### EN BANC.

### DICKINSON, PRESIDING JUSTICE, FOR THE COURT:

¶1.    In this premises-liability case, we must determine whether the trial judge erred in holding, as a matter of law, that the owners and management of an apartment complex where Bobby Batiste murdered his roommate, Andreas Galanis, could not be held liable for failing to warn Galanis about Batiste's violent tendencies. According to the trial judge, a resident concern form describing Batiste's violent intent toward a former roommate "alone is insufficient to create a genuine issue of material fact" as to whether the complex management knew of Batiste's violent nature. When viewed in the light most favorable to the plaintiffs, this was sufficient to create a genuine issue of material fact. Therefore, we hold that the trial court erred in granting summary judgment to the apartment complex, and we reverse and remand for a trial.

## FACTS AND PROCEDURAL HISTORY

¶2.    Sometime after Batiste rented an apartment from 21 Apartments, he filed a resident concern form in which he complained about his first roommate, Arthur Hosey:

> Since October of 2006, Arthur has been messing up the living area and not cleaning it up. Our kitchen is so messy that we have flies now[.] A[ ]lot of them [are] dead on the floor. To resolve this earlier, I took it upon myself to clean the whole living area twice. That failed because it got right back dirty. I have also tried talking to him about keeping it clean. It goes in one ear and out the other. There have been times when Lane or Brent has come down. They can be a witness to it. Even Mrs. Nandra [Jackson, the property manager,] has seen the mess. *I can't take it anymore. I don't want to get violent.* He's had to[o] many chances. I wish he would leave now because I can't stay in an environment where every[ ]time I turn around I have a fly in my room. I keep my things clean and my room organized. He doesn't even

2

take out the trash. *I hope this get[s] resolved soon because I really don't want to take matters in[to] my own hands.*[1]

¶3.     In February 2007, 21 Apartments denied Batiste's application for a lease renewal, after a newly required pass/fail background check indicated Batiste had a criminal history, making him ineligible to renew his lease under the new policy.  But after Batiste's attorney explained that Batiste had failed the background check because of an ongoing, nonadjudicated probation for felony credit-card fraud, and that a nonadjudication was not the same as a conviction, 21 Apartments allowed Batiste to renew his lease without conducting any additional background check.

¶4.     On August 20, 2007, Galanis applied to rent an apartment at 21 Apartments.  He filled out an application, as well as a roommate matching form and a consent form for a background check.  After meeting with Galanis, 21 Apartments employees decided Galanis and Batiste (who was without a roommate) might be a good match, based on their age and love of football.  Without disclosing Batiste's threatening statements against his former roommate,[2] 21 Apartments invited the two to the clubhouse to meet one another, after which Galanis and Batiste decided to become roommates.

¶5.     On March 6, 2008, Galanis discovered thousands of dollars missing from his bank account.  Suspecting his roommate, Galanis went to the apartment office to notify managers

---

[1] Emphasis added.

[2] "I can't take it anymore.  I don't want to get violent.  He's had to[o] many chances. . . .  I hope this get[s] resolved soon because I really don't want to take matters in[to] my own hands."

of his problem. He then went to both the bank and local police department to investigate further. The next day, his body was found in his apartment inside a wheelbarrow, wrapped in a rug. Batiste was later convicted for Galanis's murder.[3] In March 2009, Galanis's family sued 21 Apartments for failure to provide a reasonably safe premises; failure to warn Galanis about Batiste's violent tendencies; and failure to perform adequate background checks.

¶6. 21 Apartments filed a motion for summary judgment, arguing that it had no duty to protect Galanis from Batiste because it did not have actual or constructive knowledge about Batiste's violent tendencies. The Galanises responded that 21 Apartments had actual knowledge of Batiste's violent tendencies and that it had assumed a heightened duty to perform an adequate background check. The circuit court agreed with 21 Apartments and found that the apartment complex owed no duty and granted the motion for summary judgment. The Galanises appealed to the Court of Appeals, which affirmed the circuit court's decision.[4]

¶7. We then granted the Galanises' petition for writ of certiorari and now hold that the circuit judge erred by granting summary judgment. So we reverse the judgments of the circuit court and the Court of Appeals, and we remand this case for further proceedings.

## ANALYSIS

---

[3] *See* **Batiste v. State**, 121 So. 3d 808, 873 (Miss. 2013) (affirming Batiste's capital-murder conviction and death sentence).

[4] **Galanis v. CMA Mgmt. Co.**, No. 2012-CA-01757-COA, 2014 WL 5556196, at *1 (Miss. Ct. App. Nov. 4, 2014).

¶8.    In the circuit court and on appeal, the Galanises have presented two theories as to why 21 Apartments owed and breached a duty of care to Galanis.  First, they argue that 21 Apartments owed a duty of reasonable care under premises-liability law.  And second, they argue that, even if it owed no duty under premises-liability law, 21 Apartments assumed a duty of heightened care to conduct adequate background checks.

¶9.    Summary judgment is appropriate if the evidence in the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[5]  In deciding the motion, the trial court must view all the evidence in the light most favorable to the nonmoving party.[6]  We review questions of law presented in a motion for summary judgment de novo.[7]

### I.    Whether 21 Apartments owed a duty of reasonable care under premises-liability law.

¶10.   To prevail in their premises-liability action, the Galanises must show (a) that 21 Apartments owed a duty to Galanis; (b) that 21 Apartments breached that duty; (c) damages; and (d) a causal connection between the breach of that duty and the damages, such that the breach is the proximate cause of the Galanises' injuries.[8]

---

[5] Miss. R. Civ. P. 56(c).

[6] *Brown v. Credit Ctr., Inc.*, 444 So. 2d 358, 362 (Miss. 1983).

[7] *Olier v. Bailey*, 164 So. 3d 982, 986 (Miss. 2015) (citing *Double Quick, Inc. v. Moore*, 73 So. 3d 1162, 1165 (Miss. 2011)).

[8] *Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc.*, 519 So. 2d 413 (Miss. 1988) (citing *Burnham v. Tabb*, 508 So. 2d 1072 (Miss. 1987)); *Lyle v. Mladinich*, 584 So. 2d 397,

¶11. Whether a duty exists is a question of law.[9] To determine the duty owed in a premises-liability case, courts begin by classifying the status of the plaintiff.[10] Mississippi law classifies a land entrant as either an invitee, a licensee, or a trespasser.[11] Here, the parties agree that Galanis was an invitee.

¶12. A premises owner's duty to an invitee can include an obligation to protect an invitee from reasonably foreseeable injuries caused by third parties.[12]

> "Although not an insurer of an invitee's safety, a premises owner owes a duty to exercise reasonable care to protect the invitee from reasonably foreseeable injuries at the hands of another." Generally, "criminal acts can be intervening causes which break the causal connection with the defendant's negligent act, if the criminal act is not within the realm of reasonable foreseeability." In premises liability cases, foreseeability may be established by proving that the defendant had "(1) actual or constructive knowledge of the assailant's violent nature, or (2) actual or constructive knowledge that an atmosphere of violence exists on the premises."[13]

---

398-99 (Miss. 1991) (citing *May v. V.F.W. Post # 2539*, 577 So. 2d 372 (1991)).

[9] *Rein v. Benchmark Constr. Co.*, 865 So. 2d 1134, 1144 (Miss. 2004) (quoting *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 174 (Miss. 1999)).

[10] *Leffler v. Sharp*, 891 So. 2d 152, 156 (Miss. 2004) (citing *Massey v. Tingle*, 867 So. 2d 235, 239 (Miss. 2004)).

[11] *Leffler*, 891 So. 2d at 156 (citing *Massey*, 867 So. 2d at 239).

[12] *Lyle*, 584 So. 2d at 399 ("[S]uch a duty has been expanded and modified to encompass negligent or wrongful attacks on the invitee by other patrons.").

[13] *Lymas*, 50 So. 3d at 298 (internal citations omitted).

¶13. Here again, the Galanises have conceded that no atmosphere of violence existed at the time of Galanis's murder. Rather, they contend sufficient facts exist to show that 21 Apartments had actual knowledge about Batiste's violent nature. We agree.

¶14. The resident concern form provided sufficient evidence for a jury to find that 21 Apartments had actual knowledge of Batiste's dangerous nature. The parties do not dispute that 21 Apartments possessed Batiste's complaint letter before Galanis's murder. But they dispute the meaning of several key phrases, particularly Batiste's statements that "I don't want to get violent," and "I hope this get[s] resolved soon because I really don't want to take matters into my own hands."

¶15. While there may be disagreement as to the interpretation of these words, we find that—for the purposes of summary judgment, where we must draw all reasonable inferences in favor of the nonmovant—Batiste's letter provided 21 Apartments actual knowledge that Batiste had violent propensities. And with actual knowledge, when 21 Apartments suggested that Batiste and Galanis meet to consider being roommates, it had a duty to warn Galanis about Batiste's threats against his former roommate. So we find the circuit judge erred by holding as a matter of law that 21 Apartments owed Galanis no duty under premises-liability law, and by granting summary judgment to 21 Apartments.

**II. Whether 21 Apartments assumed a heightened duty of care.**

¶16.    Relying on the Mississippi Court of Appeals' opinion in ***Doe ex rel. Doe v. Wright Security Services, Inc.,***[14] the Galanises also argue that 21 Apartments undertook a heightened duty to perform background checks and to screen tenants properly as part of its agreement with Galanis.  They argue that this "self-imposed duty to invitees" is greater than the normal common-law duties owed to invitees.  We disagree.

¶17.    In ***Doe***, a male student at Capitol City Alternative School in Jackson was sexually assaulted by another student after being allowed to leave the bus stop unescorted to use the bathroom.[15]  At that time, the Jackson Public School District contracted with Wright Security Services to provide security at the bus stop.[16]  The student sued Wright, arguing that it had assumed a duty to protect the children at the bus stop through its contract with the school district.[17]  The Mississippi Court of Appeals agreed.[18]

¶18.    We find ***Doe*** clearly distinguishable from today's case.  In ***Doe***, the court stated that "indeed, this is not a premises liability case. . . .  Instead, the duties of care result from [the defendant's] contract with [the school district] to provide security services."[19]  But this case

---

[14] ***Doe ex. rel. Doe v. Wright Sec. Servs., Inc.***, 950 So. 2d 1076 (Miss. Ct. App. 2007).

[15] ***Id.*** at 1078.

[16] ***Id.***

[17] ***Id.***

[18] ***Id.*** at 1082-85.

[19] ***Id.*** at 1081.

is a premises-liability case. That distinction is important. ***Doe*** stands for the proposition that one may assume a duty of reasonable care where one previously did not exist.[20] Here, 21 Apartments already owed its tenants a duty to maintain the premises in a reasonably safe condition. Said differently, the contract in ***Doe*** created Wright's duty of reasonable care to the plaintiff, whereas 21 Apartments already owed a duty of reasonable care to Galanis.

¶19. We might agree that ***Doe*** could apply if 21 Apartments had contracted with someone to provide security, and the Galanises had tried to sue that party. But that is not the case here. 21 Apartments did not contract with anyone to protect its tenants, and no one contracted with 21 Apartments to protect its tenants.

¶20. The separate opinion authored by Justice Kitchens would conclude that by choosing to perform background checks and provide a roommate matching service, 21 Apartments assumed the duty of "reasonable care" under some law other than premises-liability law. But 21 Apartments—as premises owner—already owed Galanis—as an invitee—a duty of reasonable care. Certainly, the Galanises may argue to the jury that 21 Apartments breached its duty to warn of known dangers by failing to reveal the results of Batiste's background check when it matched Batiste and Galanis as potential roommates. But that is an issue of breach, not duty.

¶21. The separate opinion goes on to say that "[a] jury could find that Batiste's stealing Galanis's debit card was within the realm of foreseeable harm that was within the risk being

---

[20] ***Id.*** at 1080.

taken by 21 Apartments allowing someone with a criminal history to live in its apartment complex." But again, this claim falls squarely within the realm of premises liability.

¶22. So a jury certainly could find that 21 Apartments breached its duty of reasonable care, but we agree with both the circuit court and the Court of Appeals that 21 Apartments assumed no heightened duty, and the Galanises' claim may proceed only under premises-liability law.

## CONCLUSION

¶23. Because the plaintiffs produced sufficient evidence at the summary-judgment stage to show that 21 Apartments possessed actual knowledge of Batiste's violent tendencies, we reverse the Oktibbeha County Circuit Court's grant of summary judgment and the Court of Appeals' judgment affirming that grant, and we remand this case for further proceedings consistent with this opinion.

¶24. **REVERSED AND REMANDED.**

**WALLER, C.J., LAMAR, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., AND KING, J.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶25. I agree with the majority's holding that a genuine issue of material fact exists concerning whether 21 Apartments had actual knowledge of Bobby Batiste's violent nature and that the trial court erred by granting summary judgment in favor of 21 Apartments. However, because 21 Apartment undertook additional duties — which went beyond

10

reasonable care owed to invitees — by undertaking background checks of its residents and by conducting a roommate-match program, I respectfully dissent.

¶26.   21 Apartments, an apartment complex which was marketed toward college students and which was located near the campus of Mississippi State University, opened in 2006. Bobby Batiste was one of 21 Apartments' original tenants and was employed by the apartment complex as a security guard.

¶27.   In 2007, 21 Apartments hired Ambling Management Company to operate the apartments. Under Ambling's guidance, 21 Apartments adopted a new policy which required every resident to undergo a criminal background check. 21 Apartments' operation manual states that "conducting a thorough background check prior to accepting an application for residency is critical and is policy." If a resident had a criminal history, that resident's lease was not renewed. If a prospective new resident had a criminal history, that person was not allowed to sign a lease agreement. 21 Apartments was not provided with a comprehensive breakdown of the applicants' criminal records from Transunion, the company that performed the background checks. Instead, 21 Apartments was informed only that an existing or a prospective tenant did or did not have a criminal record; no details of the criminal records were provided.

¶28.   In 2007, when Batiste sought to renew his lease, his background check indicated that he had a criminal history. Consequently, 21 Apartments told Batiste that his renewal application had been denied. A few months later, Batiste's attorney faxed a letter to 21

11

Apartments and explained that Batiste was "not a convicted felon." The letter explained that Batiste had been charged with credit-card fraud. According to Batiste's attorney, although Batiste had pled guilty, Batiste's case had been "non-adjudicated, which means that he submitted to probation, but [he] was not convicted." Despite Batiste's being on probation for this offense, 21 Apartments made an exception to its policy prohibiting people with criminal histories to reside in the apartments and allowed Batiste to renew his lease. However, 21 Apartments ended Batiste's employment with the complex and did not hire him for any other jobs during the period of his subsequent residency.

¶29. Months later, Andreas Galanis applied to lease an apartment. To help tenants find roommates, 21 Apartments provided a questionnaire regarding each tenant's study habits, social lifestyle, and other factors. Although 21 Apartments informed tenants about potential roommates and introduced them, it was up to the individual tenants to select a roommate. 21 Apartments introduced Galanis and Batiste because both were football fans and because both were older than traditional college students. After Galanis and Batiste were introduced by 21 Apartments, they chose to become roommates.

¶30. The men enjoyed their living arrangement until March 6, 2008, when Galanis discovered that Batiste had stolen his debit card and had withdrawn more than $4,000 from his checking account. That afternoon, Galanis filed a complaint with the Oktibbeha County Sheriff's Department, reporting the missing money. When Galanis returned home and demanded that Batiste return the stolen money, Batiste beat him to death with a tire iron.

12

¶31.    Galanis's mother, Katerina Galanis, and his sister, Christina Galanis, sued 21 Apartments for damages, alleging negligence. Thus, to sustain a cause of action for negligence, the Galanises have the burden of proving by a preponderance of the evidence: duty, breach of duty, proximate causation, and damages. ***Palmer v. Biloxi Reg'l Med. Ctr., Inc.***, 564 So. 2d 1346, 1354 (Miss. 1990). The foundation for a negligence claim is a duty imposed on the part of the defendant. This Court has held that:

> [I]n order to recover for an injury to a person or property, by reason of negligence or want of due care, there must be shown to exist some obligation or duty toward the plaintiff which the defendant has left undischarged or unfulfilled. This is the basis on which the cause of action rests.

***Gulf M & N R.R. Co. v. Sparkman***, 180 Miss. 456, 466, 177 So. 760, 762 (1938). "[N]egligence is the result of the failure to perform a duty; therefore, actionable negligence cannot exist in the absence of a legal duty to an injured plaintiff." ***Stanley v. Morgan & Lindsey, Inc.***, 203 So. 2d 473, 475 (Miss. 1967). Whether a duty of care exists is a question of law decided by the Court. ***Foster by Foster v. Bass***, 575 So. 2d 967, 973 (Miss. 1990).

¶32.    Here, it is undisputed that, because Galanis was an invitee of 21 Apartments, the company owed Galanis a duty of reasonable care to protect him from reasonably foreseeable injuries at the hands of third parties. ***Newell v. S. Jitney Jungle Co.***, 830 So. 2d 621, 623 (¶ 6) (Miss. 2002). The majority does not hold that, nor does any Mississippi case require that, in order to exercise reasonable care to invitees, apartment complexes must contract with private companies to perform criminal background checks. Similarly absent from the majority's opinion is a finding that landlords must create a roommate-match program.

13

¶33. However, just because this is not a duty automatically imposed on landlords by law, does not mean that 21 Apartments cannot assume additional duties of its own volition. Firmly entrenched in common law is the principle that one person or company is liable to another for breach of a duty voluntarily assumed by affirmative conduct, even when that assumption of duty is gratuitous. *See **Indian Towing Co. v. United States***, 350 U.S. 61, 76 S. Ct. 122, 100 L. Ed. 48 (1955); **Hartford Steam Boiler Inspection & Ins. Co. v. Cooper**, 341 So. 2d 665 (Miss. 1977); *Restatement (Second) of Torts*, §§ 323, 324A (Am Law Inst. 1965). Section 323 of the *Restatement (Second) of Torts* provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

*Restatement (Second) of Torts* at § 323. This Court similarly has recognized that:

> As a general rule, it is the natural inherent duty owed by one person to his fellowmen, in his intercourse with them, to protect life and limb against peril, when it is in his power to reasonably do so. The law imposes upon every person who undertakes the performance of an act which, it is apparent, if not done carefully, will be dangerous to other persons, or the property of other persons—the duty to exercise his senses and intelligence to avoid injury, and he may be held accountable at law for an injury to person or property which is directly attributable to a breach of such duty . . . . Stated broadly, one who undertakes to do an act or discharge a duty by which conduct of others may be properly regulated and governed is under a duty to shape his conduct in such manner that those rightfully led to act on the faith of his performance shall not suffer loss or injury through his negligence.

14

*Dr. Pepper Bottling Co. v. Bruner*, 245 Miss. 276, 148 So. 2d 199, 201 (1962); *accord*

*U.R.S. Co., Inc. v. Gulfport-Biloxi Reg'l Airport Auth.*, 544 So. 2d 824 (Miss. 1989).

¶34.    Here, 21 Apartments decided to perform background checks on applicants for residency in its complex.  This practice exceeded the duties imposed on 21 Apartments at law. Nevertheless, 21 Apartments was obligated to administer its background check policy with reasonable care. *See Bruner*, 148 So. 2d at 201.  The duty to perform a background check and properly screen tenants was part of an assumed duty that 21 Apartments owed to all of its tenants, not just to Galanis.  Despite its having a "zero tolerance" policy for criminal history, 21 Apartments allowed Batiste to renew his lease and matched him with Galanis as a potential roommate. Interestingly, 21 Apartments did not make a similar exception with regard to Batiste's employment with the apartment complex.

¶35.    In addition to assuming the duty to perform background checks, 21 Apartments also chose to create and administer a roommate-matching service for its residents.  In so doing, 21 Apartments had a duty to administer the program with reasonable care. *See id.* As part of 21 Apartment's application process, Galanis agreed to an investigation of his "credit, character, and reputation," including a criminal background check. When Galanis consented to the background investigation, he knew that his having a criminal history would result in denial of his application. By moving into 21 Apartments and by consenting to participate in the roommate-matching program, Galanis believed that any potential roommate with whom he would share residential space would have undergone the same scrutiny as he and would

15

have no criminal history. Thus, given that 21 Apartments had created a roommate-matching program, performed background checks on its prospective residents, and recommended that Galanis move in with a person with a criminal history, a genuine issue of material fact remains as to whether 21 Apartments breached its duty to administer its roommate-matching program with reasonable care.

¶36. A jury could find that Batiste's stealing Galanis's debit card was within the realm of foreseeable harm that was within the risk being taken by 21 Apartments allowing someone with a criminal history to live in its apartment complex. Moreover, a jury could find that Batiste's violent reaction toward Galanis also was reasonably foreseeable as a logical consequence of the breach of 21 Apartments' duty to administer its background checks and roommate-matching program with reasonable care. After all, is not the purpose of having a policy to exclude residents with a criminal history to avoid the commission of crimes on the apartment complex's premises?

¶37. Ultimately, I agree with the majority that 21 Apartments had actual knowledge of Batiste's violent nature and that the trial court erred by granting summary judgment in favor of 21 Apartments. However, 21 Apartments assumed additional duties outside those imposed upon landlords by law, by performing background checks and by administering a roommate-matching program. Moreover, the record is clear that 21 Apartments failed to discharge these duties with reasonable care. As such, I believe that the Galanises should be allowed to proceed in the trial court on the duty of reasonable care owed to invitees as well as on the

16

negligence actions generated by the additional duties that 21 Apartments voluntarily assumed.  I therefore  respectfully concur in part and dissent in part.

**RANDOLPH, P.J., AND KING, J., JOIN THIS OPINION.**