KITCHENS, Justice,
concurring in part and dissenting in part:
¶ 25. I agree with the majority’s holding that a genuine issue of material fact exists concerning whether 21 Apartments had actual knowledge of Bobby Batiste’s violent nature and that the trial court erred by granting summary judgment in favor of 21 Apartments. However, because 21 Apartment undertook additional duties — which went beyond reasonable care owed to invitees — by undertaking background checks of its residents and by *1219 conducting a roommate-match program, I respectfully dissent.
¶ 26. 21 Apartments, an apartment complex which was marketed toward college students and which was located near the campus of Mississippi State University, opened in 2006. Bobby Batiste was one of 21 Apartments’ original tenants and was employed by the apartment complex as a security guard.
¶ 27. In 2007, 21 Apartments hired Ambling Management Company to operate the apartments. Under Ambling’s guidance, 21 Apartments adopted a new policy which required every resident to undergo a criminal background check. 21 Apartments’ operation manual states that “conducting a thorough background check pri- or to accepting an application for residency is critical and is policy.” If a resident had a criminal history, that resident’s lease was not renewed. If a prospective new resident had a criminal history, that person was not allowed to sign a lease agreement. 21 Apartments was not provided with a comprehensive breakdown of the applicants’ criminal records from Transun-ion, the company that performed the background checks. Instead, 21 Apartments was informed only that an existing or a prospective tenant did or did not have a criminal record; no details of the criminal records were provided.
¶ 28. In 2007, when Batiste sought to renew his lease, his background check indicated that he had a criminal history. Consequently, 21 Apartments told Batiste that his renewal application had been denied. A few months later, Batiste’s attorney faxed a letter to 21 Apartments and explained that Batiste was “not a convicted felon.” The letter explained that Batiste had been charged with credit-card fraud. According to Batiste’s attorney, although Batiste had pled guilty, Batiste’s case had been “non-adjudicated, which means that he submitted to probation, but [he] was not convicted.” Despite Batiste’s being on probation for this offense, 21 Apartments made an exception to its policy prohibiting people with criminal histories to reside in the apartments and allowed Batiste to renew his lease. However, 21 Apartments ended Batiste’s employment with the complex and did not hire him for any other jobs during the period of his subsequent residency.
¶ 29. Months later, Andreas Galanis applied to lease an apartment. To help tenants find roommates, 21 Apartments provided a questionnaire regarding each tenant’s study habits, social lifestyle, and other factors. Although 21 Apartments informed tenants about potential roommates and introduced them, it was up to the individual tenants to select a roommate. 21 Apartments introduced Galanis and Batiste because both were football fans and because both were older than traditional college students. After Galanis and Batiste were introduced by 21 Apartments, they chose to become roommates.
¶ 30. The men enjoyed their living arrangement until March 6, 2008, when Ga-lanis discovered that Batiste had stolen his debit card and had withdrawn more than $4,000 from his checking account. That afternoon, Galanis filed a complaint with the Oktibbeha County Sheriffs Department, reporting the missing money. When Galanis returned home and demanded that Batiste return the stolen money, Batiste beat him to death with a tire iron.
¶ 81. Galanis’s mother, Katerina Galan-is, and his sister, Christina Galanis, sued 21 Apartments for damages, alleging negligence. Thus, to sustain a cause of action for negligence, the Galanises have the burden of proving by a preponderance of the evidence: duty, breach of duty, proximate causation, and damages. Palmer v. Biloxi Reg’l Med. Ctr., Inc., 564 Sq.2d 1346, 1354 *1220 (Miss.1990). The foundation for a negligence claim is a duty imposed on the part of the defendant. This Court has held that:
[I]n order to recover for an injury to a person or property, by reason of negligence or want of due care, there must be shown to exist some obligation or duty toward the plaintiff which the defendant has- left undischarged or unfulfilled. This is the basis on which the cause of action rests.
Gulf M & N R.R. Co. v. Sparkman,; 180 Miss. 456, 466, 177 So. 760, 762 (1938). “[N]egligence i's the result of the failure to perform a duty; therefore, actionable negligence cannot exist in the absence of a legal duty to an injured plaintiff.” Stanley v. Morgan & Lindsey, Inc., 203 So.2d 473, 475 (Miss.1967). Whether a duty of care exists is a question of law decided by the Court. Foster by Foster v. Bass, 575 So.2d 967, 973 (Miss.1990).
• ¶32. Here, it is undisputed that, because Galanis was an invitee of 21 Apartments, the company owed Galanis a duty of reasonable care to protect him from reasonably foreseeable injuries at the hands of third parties. Newell v. S. Jitney Jungle Co., 830 So.2d 621, 623 (¶ 6) (Miss.2002). The majority does not hold that, nor' does any Mississippi case require that, in order to exercise reasonable care to invitees, apartment complexes must contract with private companies to perform criminal background checks. Similarly absent from the’majority’s opinion is a finding that landlords must create a roommate-match program.
¶ 33.' However, just because this is not a duty automatically imposed on landlords by law,- does not mean that 21 Apartments cannot assume additional duties of its own volition. Firmly entrenched in common law is the principle that one person or company is liable to another for breach of a duty voluntarily assumed by affirmative conduct, even when that assumption of duty is gratuitous. See Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); Hartford Steam Boiler Inspection & Ins. Co. v. Cooper, 341 So.2d 665 (Miss.1977); Restatement (Second) of Torts, §§ 323, 324A (Am Law Inst. 1965). Section 323 of the Restatement (Second) of Torts provides:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other’s person or things, is subject to liability to the other for' physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
(a) his failure to exercise such care increases the risk of such harm, or
(b) the harm is suffered because of the other’s reliance upon the undertaking.
Restatement (Second) of Torts at § 323. This Court similarly has recognized that:
As a general rule, it is the natural inherent duty owed by one person to his fellowmen, in his intercourse with them, to protect life and limb against peril, when it is in his power to reasonably do so. The law imposes upon every person who undertakes the performance of an act which, it is apparent, if not done carefully, will be dangerous to other persons, or the property of other persons— the duty to exercise his senses and intelligence to avoid injury, and he may be held accountable at law for an injury to person or property which is directly attributable to a breach of such duty.... Stated broadly, one who undertakes to do an act or discharge a duty by which conduct of others may be properly regulated and governed is under a duty to shape his conduct in such manner that those rightfully led to act on the faith of *1221 his performance shall not suffer loss or injury through his negligence.
Dr. Pepper Bottling Co. v. Bruner, 245 Miss. 276, 148 So.2d 199, 201 (1962); accord U.R.S. Co., Inc. v. Gulfport-Biloxi Reg'l Airport Auth., 544 So.2d 824 (Miss.1989).
¶34. Here, , 21 Apartments decided to perform background checks on applicants for residency in’its complex. This practice exceeded the duties imposed on 21 Apart-' ments at law. Nevertheless, 21 Apartments was obligated to administer its background check policy with reasonable care. See Bruner, 148 So.2d at 201. The duty to perform a background check and properly screen tenants was part of an assumed duty that 21 Apartments owed to all of its tenants, not just to Galanis. Despite its having a “zero tolerance” policy for criminal history, 21 Apartments allowed Batiste to renew his lease and matched him with Galanis as a potential roommate. Interestingly, 21 Apartments did not make a similar- exception with regard to Batiste’s employment with the apartment complex.
¶ 85. In addition to assuming the duty to perform background checks, 21 Apartments also chose to create and administer a roommate-matching service for its residents. In so doing, 21 Apartments had a duty to administer the program with reasonable care. See id. As part of 21 Apartment’s application process, Galanis agreed to an investigation of his “credit, character, and reputation,” including a criminal background check. When Galanis consented to the background investigation, he knew that his having a criminal history would result in denial of his application. By moving into 21 Apartments and by consenting to participate in the roommate-matching program, Galanis believed that any potential roommate with whom he would share residential space would have undergone the same scrutiny as he and would have no criminal history. -Thus,, given that 21 Apartments had created a roommate-matching program, performed background checks on its prospective residents, and recommended that Galanis move in with a person with a criminal history, a genuine issue of material fact remains as to whether 21 Apartments breached its duty to administer its roommate-matching program with reasonable care.
¶ 36. A jury could find that Batiste’s stealing Galanis’s -debit card was within the realm of foreseeable harm that was within the risk being taken by 21 Apartments allowing someone with a criminal history to live in its apartment complex. Moreover, a jury could find that Batiste’s violent reaction toward Galanis also was reasonably foreseeable as a logical consequence of the breach of 21 Apartments’ duty to administer its background checks and roommate-matching program with reasonable care. After all, is not the purpose of having a policy to exclude residents with a criminal history to avoid the'commission of crimes on the apartment complex’s premises?
,¶ 37. Ultimately, I agree with the majority that 21 Apartments had actual knowledge of Batiste’s violent nature and that the trial court erred by .granting summary judgment in favor of 21 Apartments. However, 21 Apartments assumed additional duties outside those imposed upon landlords by law, by performing background checks and by administering a roommate-matching program. Moreover, the record is clear that 21 Apartments failed to discharge these duties with reasonable care. As such, I believe that the Galanises should be allowed to proceed in the trial court on the duty of reasonable care owed to invitees as well as on the negligence actions generated by the additional duties that 21 Apartments voluntari *1222 ly assumed. I therefore respectfully concur in part and dissent in part.
RANDOLPH, P.J., AND KING, J., JOIN THIS OPINION.